STATE *ex rel.* CHAPMAN REVERCOMB

v.

D. PITT O'BRIEN, *Secretary Of State*

(No. 10806)

And

STATE *ex rel.* PHILIP H. HILL

v.

D. PITT O'BRIEN, *Secretary Of State*

(No. 10807)

Submitted March 9, 1956.     Decided March 14, 1956.

*Chapman Revercomb, Leslie D. Price,* for relator.

*Hill, Thomas, Williams & Hubbard, Philip H. Hill, J. Chesley Williams, William C. Beatty,* for relator Philip H. Hill.

*Charles R. McElwee,* for respondent.

BROWNING, PRESIDENT:

The Honorable Harley M. Kilgore, United States Senator from West Virginia, died in office on the 28th day of February, 1956, leaving unexpired of the term for which he was elected, two years, ten months and three days. Philip H. Hill and Chapman Revercomb, individual relators in the two instant proceedings, tendered to the respondent, D. Pitt O'Brien, Secretary of State, their certificates of announcement as candidates, and filing fees, for the Republican nomination to the office thus vacant, Hill on March 2, 1956, and Revercomb on March 3, 1956, which certificates and filing fees respondent refused to accept.

Upon the individual petitions of the relators on March 5, 1956, this Court issued rules directed to the respondent to show cause why writs of mandamus, requiring him to accept such certificates and filing fees, and perform the other official duties imposed by statute in relation thereto, should not be awarded against him.

Respondent demurred to the petitions of the relators on the grounds: (1) That the provisions of Code, 3-10-3, when construed in the light of circumstances existing at the time of its enactment, reveal a legislative intent to establish the date of demarcation, between the primary election and convention methods of selecting nominees to fill a vacancy in the office of United States Senator, as the currently existing filing deadline for candidates seeking nomination in a primary election; (2) the fourteenth Saturday preceding a primary election is the last date on which a person may file a certificate of candidacy; and (3) nominees for the instant office are to be chosen by party convention.

Code, 3-10-4, provides: "Any vacancy occurring in the office of * * *, United States senator, * * * shall be filled by the governor of the State by appointment. * * * if the unexpired term * * * be for a period of less than two years and six months, the appointment to fill the vacancy shall be for the unexpired term. If the unexpired term * * * be for a longer period than above specified, the appointment shall be until the next general election, * * * at which election the vacancy shall be filled by election for the unexpired term. * * * Candidates to fill any vacancy * * * shall be nominated in the manner provided in this article for nominating candidates to fill a vacancy in the office of governor, to be voted for at a general election."

Code, 3-10-3, relating to a vacancy in the office of governor, and referred to in the above quoted section, provides in part as follows: "If the vacancy is to be filled at a general election and shall occur more than thirty days before the date of the primary election to nominate candidates to be voted for at such general election, candidates to fill the vacancy shall be nominated at such primary election. * * *" The statute then provides that if the vacancy occurs less than thirty days preceding the primary election, the nominees for such office shall be chosen by party conventions.

The next general election in this State will take place on November 6, 1956, and the primary election to nominate candidates to be voted on at such general election will be held on May 8, 1956.

The regular statute regulating candidacy in a primary election is Code, 3-4-6, which provides that any person eligible to hold an office may file (with the Secretary of State in the instant cases) a certificate declaring himself a candidate for the nomination for such office. The section then sets out the form of the certificate and provides: "Such certificate shall be filed with the secretary of state * * * on or before the fifth Saturday preceding the primary election day, and must be received before

midnight, eastern standard time, of that day or, if mailed, shall be postmarked before that hour."

Chapter 1, Acts of the Legislature, Extraordinary Session, 1944, which Act expired by its own terms on June 30, 1947, was reenacted, in almost identical language, by Chapter 90, Acts of the Legislature, Regular Session, 1951, which Act is in effect at the present time, and forms the basis for the respondent's refusal to accept the certificates of announcement, and filing fees of the relators.

The pertinent provisions of Chapter 90, Acts of the Legislature, Regular Session, 1951, entitled "Absentee Voting by Members of the Armed Services", are as follows:

§1 - "In the enactment of this article, it is the purpose of the legislature to make only such temporary changes or modifications in existing election laws as may be necessary to provide a practicable means whereby West Virginians in the armed services may be afforded an opportunity to vote during the period of time covered by this article."

§2 - "While this article is in effect, the fourteenth Saturday rather than the fifth Saturday preceding the day fixed for the primary election shall be the last day on which a person may file announcement of his candidacy for nomination to any office. In all other respects, an announcement of candidacy shall be governed by the provisions of sections five-a and six, article four, chapter three of the Code."

§3 - "The secretary of state shall, on the Monday following the fourteenth Saturday preceding the day fixed for the primary election, proceed with the certification and posting of candidacies. Such certification and posting shall in all other respects be governed by the provisions of section eight, article four, chapter three of the Code."

§7 - "Upon receipt by the circuit clerk of the list of can-

didates certified by the secretary of state * * * the ballot commissioners shall * * * print and deliver such ballots to the clerk of the circuit court as soon as possible, but not later than the twelfth Saturday preceding the day fixed for the primary election. * * * but, in presidential election years, regardless of the time limits herein fixed, no such ballots shall be printed, until the circuit clerk shall have received from the secretary of state the names of the respective candidates of each party, entitled to a place on said ballot, of its candidates for president and vice president of the United States. * * *" It is then provided that such ballots may be on lightweight paper, different from the regular ballot, and continues:

"If, after the ballots are printed but before they are distributed as provided in the following sections, any change in the names printed thereon should become necessary, the ballot commissioners shall make the necessary changes by the use of stickers or by the printing of additional ballots.

"Except as otherwise specified in this section, preparation, printing and delivery of absent voters' ballots shall be governed by the provisions of section nine, article four, section three, article five and section fifteen, article six, of chapter three of the Code."

§8 - "Any person, man or woman, who * * * is a member of any branch of the armed services of the United States, and who in the performance of his duties expects to be absent on election day from the County in which he is registered, may vote by absent voter's ballot as provided in this article, * * *.

"Any other person may vote by absent voter's ballot only as provided in article six, chapter three of the Code."

§11 - "Upon delivery of the ballots to the clerk of the circuit court * * * the clerk shall proceed with the mailing of the ballots. In such mailing, priority shall be given to ballots which are to be sent to absent voters outside the territorial limits of the United States, * * *"

§17 - "All provisions of the Code which are inconsistent herewith shall be temporarily suspended for the duration of this article. Upon the expiration of this article, however, all such provisions shall again become of full force and effect as if this article had never been passed."

The questions presented being identical, the two proceedings have been combined and will be disposed of in one opinion.

The relators, who appeared by separate counsel and filed separate briefs, are not in agreement as to the final filing date for candidates who seek nominations in the primary election to fill the unexpired Senate term. One contends that it is the fifth Saturday before the primary election, the other thirty days prior thereto. Both contend that no ambiguity is created by the provisions of Code, 3-10-3, and Chapter 90, Acts of the Legislature, Regular Session, 1951, inasmuch as different subjects are considered in those Acts, and that the latter is not in conflict with the former. The respondent contends that the pertinent statutes are ambiguous, and that they should be construed to arrive at the legislative intent. He would have this Court construe the "thirty days" vacancy provision to correspond with the last regular date for filing in a primary election, whatever date the latter may be. It will be observed from an examination of the history of this legislation that initially there was no regular date fixed for filing in a primary election, but by the provisions of Chapter 78, Section 8, Acts of the Legislature, Regular Session, 1919, the Legislature provided: "Such certificate shall be filed at least thirty days before the primary election day." This statute remained unchanged until 1941 when, by Chapter 39, Section 6, Acts of the Legislature, Regular Session, it was changed to read: "* * * on or before the fifth Saturday preceding the primary election day, * * *." As heretofore stated, Chapter 90, Acts of the Legislature, Regular Session, 1951, provided that: "While this article is in ef-

fect, the fourteenth Saturday rather than the fifth Saturday preceding the day fixed for the primary election shall be the last day on which a person may file announcement of his candidacy * * *."

It will be observed that under the vacancy statute, Code, 3-10-3, the provision that if the vacancy is to be filled at a general election, and shall occur "more than thirty days before the date of the primary election", candidates shall be nominated at the primary election. The question as to the last date for filing as a candidate for the nomination to fill a vacancy within the provisions of Code, 3-10-3, is not squarely presented in these proceedings. However, it has been contended in arguments and briefs that such candidates must file at least thirty days before a primary election, and for the purpose of discussion in this opinion, and for that purpose only, such fact will be presumed to be true.

There can be no doubt that, prior to 1941 and even thereafter, the last day for regular filing, and the last day for filing to fill a vacancy, were closely related in time, and were fixed at approximately the same number of days prior to the primary election. The radical change was made by the Amendments of 1944 and 1951 when the regular filing date was fixed as the fourteenth Saturday prior to the primary election. To impart to the Legislature an intent that the provision "more than thirty days" before a primary election would *ipso facto* coincide with the regular filing date, whether it be the fifth Saturday prior to the primary election, or the fourteenth Saturday, as contended by the respondent, would exceed the judicial function which is to construe laws and not enact them.

However, we are in agreement with the contention of the respondent rather than the relators upon the question of the ambiguity of the pertinent statutes. We are of the opinion that these statutes are sufficiently doubtful that reasonable minds might be uncertain or disagree as to their meaning. We conclude that the statutes here-

tofore mentioned, and others to be referred to hereinafter, have reference to the same general subject, that is the time within which a certificate of candidacy may be filed for nomination in a primary election. In such case, there is as much reason for applying the rule of *pari materia* in considering the pertinent statutes, though passed by the Legislature at different times, as there is in applying the rule that in the interpretation of a statute the whole body of the Act is to be examined with a view to arriving at the object sought to be accomplished by each part thereof. In 17 M.J., Statutes, §40, many decisions of this Court are cited in footnote nine for this statement: "All statutes in pari materia should be read and construed together, as if they formed parts of the same statute and were enacted at the same time, and where there is a discrepancy or disagreement among them such interpretation should be given as that all may, if possible, stand together. * * *"

A statute intended by the lawmaking body to become effective as part of a general system of law will be so construed as to operate in harmony with such system, and not to contravene or infringe upon it, if the terms thereof, fairly and reasonably considered, will permit such construction. *Ex parte Anderson,* 81 W. Va. 171, 94 S. E. 31; *Reeves* v. *Ross,* 62 W. Va. 7, 57 S. E. 284; *Coal & Coke Railway Co.* v. *Conley and Avis,* Pt. 27 Syl., 67 W. Va. 129, 67 S. E. 613.

In *White* v. *Morton,* 114 W. Va. 29, 171 S. E. 762, the first syllabus point reads: "Two statutes relating to the same subject should be read together, although they were enacted at different times and the latter makes no reference to the former." Perhaps it could be stated that the principle that statutes in *pari materia* should be construed together is only a restatement of the presumption against the implied repeal of statutes. While Chapter 90, Acts of the Legislature, Regular Session, 1951, specifically provides that the fourteenth Saturday, rather than the fifth Saturday, preceding the day fixed for the pri-

mary election, shall be the last day upon which a person may file a certificate of candidacy, no reference is made at any place in the Act to the provisions of Code, 3-10-3, permitting the filling of a vacancy at a primary election, if the vacancy occurs more than thirty days before the date of such election.

In *United States Coal & Coke Co.* v. *Turk, et al.,* 127 W. Va. 368, 33 S. E. 2d. 463, this Court said that: "Implied repeals are not favored in any case; and courts refrain from speculating on, or hazarding a guess as to, the intention of a legislative body which has elected not to express such intent, or neglected to make it apparent. Many cases, state and federal, announce this principle." Upon this subject, it was stated in *Belknap* v. *Shock,* 125 W. Va. 385, 24 S. E. 2d. 457, that: "* * * To be automatically repealed by a subsequent statute, the two acts must be so conflicting that their common survival is a legal impossibility, or that only one can be in force at a given time. * * *" To the same effect are *Harbert* v. *Harrison County Court,* 129 W. Va. 54, 39 S. E. 2d. 177, and *Clemans* v. *Board of Education,* 68 W. Va. 298, 69 S. E. 808. In applying these principles to the instant proceedings, we are not unmindful of the provisions of §17 of Chapter 90, heretofore quoted, which "temporarily suspended" all provisions of the Code inconsistent therewith. As a general rule, when an Act provides for the repeal of all laws inconsistent therewith, such laws are expressly repealed thereby. However, such general repealing provisions, of themselves, have been held to be insufficient to effect the repeal of a prior statute which deals with a particular subject, in the absence of an absolute repugnancy. *Harbert* v. *Harrison County Court, supra; Belknap* v. *Shock, supra; State* v. *Hinkle,* 129 W. Va. 393, 41 S. E. 2d. 107. We find no irreconcilable conflict between the provisions of Code, 3-10-3, and Chapter 90, Acts of the Legislature, Regular Session, 1951.

It may be true, as contended by the respondent in brief and argument, that difficult administrative problems may

result from this finding. Since the parties to these proceedings were of opinion that no factual question was in dispute, and the issues were made upon demurrers by the respondent to the petitions of relators, we can only look to the statutes themselves for ascertainment of such problems as may thus be created, and then only for the purpose of ascertaining the intention of the Legislature in adopting this legislation. It is true, as provided by Chapter 90, Acts of the Legislature, Regular Session, 1951, that the date for the certification by the respondent of candidacies to the clerks of the circuit courts of this State has passed, as well as the date for the ballot commissioners to print and deliver to the clerks of the circuit courts such ballots for distribution to the voters of West Virginia, who are in the "armed services", and desire to vote in the May 8 primary election. This provision of Chapter 90, however, must not be overlooked: "If, after the ballots are printed but before they are distributed as provided in the following sections, any change in the names printed thereon should become necessary, the ballot commissioners shall make the necessary changes by the use of stickers or by the printing of additional ballots."

If this Court should hold that the provisions of Code, 3-10-3, are "inconsistent" with Chapter 90, Acts of the Legislature, Regular Session, 1951, and "temporarily suspended" thereby many other provisions of the Code, would be similarly affected without any reference thereto except the "general repealer" clause in Chapter 90. Other offices, in which a vacancy is filled, if occurring more than thirty days before a primary election, by nomination in such primary election, or by other method if it occurs less than thirty days preceding a primary election, are: Governor, Secretary of State, Auditor, Treasurer, Attorney General, Superintendent of Free Schools, Commissioner of Agriculture, Judge of the Supreme Court of Appeals, Judge of a Circuit, Common Pleas, Intermediate or other inferior court, Code, 3-10-4; State Senator or Member of the House of Delegates, Code, 3-

10-6; Clerk of a Circuit Court, Code, 3-10-7, as amended; County Commissioner, Clerk of a County Court, Justice or Constable, Code, 3-10-8, as amended; Prosecuting Attorney, Sheriff, Assessor or County Surveyor, Code, 3-10-10.

Other significant provisions of the election laws generally are:

Code, 3-4-10; "* * * If, after the time is closed for announcing as a candidate for any office, and not later than the fifth day preceding the date of the primary election, any person who has filed an announcement of candidacy shall withdraw and decline to stand as a candidate for the office, or shall die, the executive committee of the party, * * * may, in its discretion, fill the vacancy caused by such withdrawal or death, by naming another candidate for such office.

"* * * If the ballots have been printed * * * the ballot commissioners shall cause the name of the candidate * * * to be printed on 'stickers' and supplied to the election officials * * *."

Code, 3-4-23, as amended, though pertaining to a general election, is similar and provides:

"If any vacancy shall occur in the party nomination of candidates for office, * * * it may be filled * * * by the executive committee * * *. If such vacancy be not filled by the executive committee, if it be for an office to be filled by the voters of the entire state, within thirty days next preceding the date of election, or if it be for any other office, within twenty days next preceding the date of election, * * * it shall be lawful for the chairman of the political party executive committee * * * to fill such vacancy * * * ." Code, 3-5-7, makes provisions for "stickers", bearing the name of the candidate designated under the provisions of Code, 3-4-23, as amended, to be affixed in the proper place on the ballot, where the ballots have been printed before such vacancy occurred or was filled.

A consideration and harmonization of all the statutes referred to in this opinion, pertaining to the primary election laws generally, leads this Court to the conclusion that relators are entitled to the writs as prayed for. In arriving at this conclusion, we have carefully considered all parts of Chapter 90, Acts of the Legislature, Regular Session, 1951, and are of opinion that it was intended solely to prevent a disenfranchisement of men and women in the armed services. Under the provisions of §8 thereof, only men and women in the armed services are entitled to avail themselves of its provisions. All others are governed by the applicable general laws. Under the general law, ballots for voters, absentee or otherwise, other than those in the armed services, need only be prepared and printed at least twenty-five days previous to a primary election day. Code, 3-4-9, as amended.

If those who have the responsibility of distributing ballots to voters of this State, who will be members of the armed services on the 8th day of May, 1956, exercise due diligence, there will be few, if any, such voters who will be deprived of the right to vote for a candidate for the nomination for the office of United States Senator. The only other alternative for the selection of candidates for that office is the holding of party conventions, and, in such cases, few, if any, citizens of this State who are in the armed services would have an opportunity to participate in such selections. We believe it to be the policy of the lawmakers of this State to permit the voters generally to participate in the selection of candidates for all offices in primary elections whenever possible, and have given consideration to that fact in arriving at our decision as to the legislative intent when Chapter 90 was enacted in 1951. Even though such interpretation of the provisions of Chapter 90 may result in some voters in the armed services, who make early requests for absentee ballots, receiving a ballot containing all of the candidates of his political party, except those for United States Senator, all of the civilian voters of this State and

most of those in the armed services will have an opportunity to select nominees for all offices to be voted on at the May 8 primary election. It is better that a few be deprived of the opportunity to vote for candidates for one office than that the electorate of the entire State be prevented from selecting nominees for this office by primary election in keeping with the public policy of this State. No candidates for public office are selected by convention under our present election laws except where vacancies occur at a time when it is not possible to do so by primary elections.

The performance by public officials of a plain statutory duty, if it does not involve the exercise of discretion or judgment on their part, may be enforced by writ of mandamus. *Draper, et al.* v. *Anderson, et al.*, 102 W. Va. 633, 135 S. E. 837. *Duncan* v. *County Court of Cabell County, et al.*, 138 W. Va. 106, 75 S. E. 2d. 97; and *Maynard, et al.* v. *Layne, et al.*, 140 W. Va. 819, 86 S. E. 2d. 733.

This Court holds that upon the record presented to it, the relators have a clear legal right to the performance of the acts demanded of the respondent, and that a corresponding duty rest upon the respondent to perform the particular acts sought to be required of him by the relators. A writ of mandamus will be granted in each of these proceedings.

*Writs granted.*