STATE *ex rel.* C. M. McDANIEL, *et al.*

*v.*

GEORGE C. DUFFIELD, *Executive Secretary, et al.,* AS MEMBERS OF BOARD OF TRUSTEES OF THE WEST VIRGINIA PUBLIC EMPLOYEES RETIREMENT SYSTEM, *etc., and* W. W. ALEXANDER, *Mayor,* CITY OF NITRO, and BORDEN E. GEWIN, *et al.,* MEMBERS OF COUNCIL OF CITY OF NITRO

(No. 12350)

Submitted September 2, 1964.     Decided October 20, 1964.

*Neal A. Kinsolving,* for relators.

*C. Donald Robertson,* Attorney General, *J. Patrick Bower,* Assistant Attorney General, for respondents *Duffield* and others.

*Luke W. Michael,* City Attorney, for respondents *Alexander* and others.

CAPLAN, JUDGE:

In this original proceeding in mandamus the petitioners, C. M. McDaniel, Kenneth C. King, Denver R. Rawlings, Clyde C. Harris, Ernest W. Hedrick and James L. Raynes, members of the fire department of the City of Nitro, seek a writ to compel the respondents, George C. Duffield, Denzil L. Gainer, John H. Kelly, Truman E. Gore, Charles M. Walker and Charles F. Fox, Executive Secretary and members of the Board of Trustees of the West Virginia Public Employees Retirement System, to refund contributions heretofore made by the petitioners into the West Virginia

Public Employees Retirement System and to permit their withdrawal from said system. The mayor and the members of the city council were joined as respondents in this proceeding.

A rule was granted by this Court, returnable on September 2, 1964, upon which date the case was submitted for decision upon the pleadings, exhibits, briefs and arguments of counsel.

The City of Nitro was incorporated in 1932 under the provisions of Chapter 8 of the Code of West Virginia. Throughout the years it has maintained and operated a paid fire department. No retirement system then having been provided for its firemen, or for any of its employees, the council of said city on June 27, 1961, in accordance with the provisions of Code, 1931, 5-10-16, as amended, adopted a resolution whereby the City of Nitro became a participating public employer under the Public Employees Retirement Act, which was enacted by the Legislature in 1961. As a result of this action all of the employees of the city, including the members of the fire department, became members of the West Virginia Public Employees Retirement System. Accordingly, from July 1, 1961, the effective date of Nitro's participation in the said state retirement system, all such employees contributed to the fund as required by the provisions of Code, 1931, 5-10-29, as amended.

On January 21, 1964, the council of the City of Nitro enacted an ordinance providing for the establishment of a firemen's pension or relief fund. Thereafter, the recorder of the City of Nitro, by letter dated February 4, 1964, notified the Executive Secretary of the state retirement system that the firemen of said city would no longer participate as members of the state system and requested a refund of the contributions made by them to said state system. The refusal by the Board of Trustees and the Executive Secretary of the West Virginia Public Employees Retirement System to permit the withdrawal of these firemen from said system and to refund contributions made by them gave rise to this controversy.

It is pertinent to note here that in 1948 the council of the City of Nitro, by ordinance, amended the charter of said city by adopting and making a part thereof Articles 4 and 5 of Chapter 8A of the Code of West Virginia. The pertinence of this action becomes evident when we consider the Code provisions upon which the parties hereto primarily rely.

The petitioners contend that by virtue of the provisions of Code, 1931, 8-6-10, as amended, the City of Nitro was under a mandatory duty to establish a firemen's pension or relief fund; that, although no such fund was in fact established, they were nonetheless ineligible to become members of the state retirement system; that they were therefore erroneously made members thereof; and that the action of the Executive Secretary and Board of Trustees of the state retirement system in refusing to permit their withdrawal and to grant their request for a refund of contributions was arbitrary and capricious.

The Board of Trustees and Executive Secretary of the state retirement system take the position that by reason of having adopted Code, 1931, 8A-4-11, as amended, the City of Nitro was not under any mandatory duty to establish a firemen's pension or relief fund. They further assert that the said city having joined the state system in accordance with the provisions of Code, 1931, 5-10-16, as amended, no authority, statutory or otherwise, exists which will permit these petitioners to withdraw as participating members of such state system. Consequently, they further assert that the respondents have no power to allow or authorize such withdrawal.

Consideration of the position taken by the petitioners requires an examination of certain pertinent provisions of the Code. Code, 1931, 8-6-10, as amended, provides that any municipal corporation having a fire department supported in whole or in part at public expense shall provide for the establishment and maintenance of a firemen's pension or relief fund. This language is mandatory and it appears therefrom that Nitro was under a duty to establish such fund. However, as herein noted, that city adopted the whole

of Article 4, Chapter 8A of the West Virginia Code. Code, 1931, 8A-4-11, as amended, where pertinent reads as follows: "Cities of class I and class II shall, and cities of class III may provide for pension and relief funds for firemen * * *." Nitro is a class III city and, under the above quoted statute, has been, since its adoption of Code, 1931, 8A-4-11, as amended, under no mandatory obligation to establish a firemen's pension fund.

Both of the aforementioned Code provisions constitute a part of the general law of this state. Both operate uniformly on all persons of a class. *State ex rel. Plymale* v. *City of Huntington*, 147 W. Va. 728, 131 S. E. 2d 160. Code, 1931, 8-6-10, as amended, applies to all cities. Code, 1931, 8A-4-11, as amended, applies to all cities which operate as home rule cities or which, as permitted by Code, 1931, 8A-1-10, as amended, have adopted Code, 1931, 8A-4, as amended. The contention of the petitioners that Code, 1931, 8A-4-11, as amended, is now a part of the charter of Nitro and therefore subservient to Code, 1931, 8-6-10, as amended, is untenable. Even though Nitro has made Code, 1931, 8A-4-11, as amended, a part of its charter, such action does not effect a repeal of that statute as a part of the state law.

The City of Nitro, being under no mandatory duty to establish a firemen's pension fund, and having in fact not established such fund, was eligible to participate in the state employees retirement system. Code, 1931, 5-10-17(b), as amended, provides: "The membership of the retirement system shall not include any person who is a member of * * * any municipal retirement system for * * * firemen * * *." Obviously, these petitioners were not members of a municipal retirement system when Nitro elected to become a participating employer in the state system. They were not, therefore, barred by Code, 1931, 5-10-17(b), as amended, from becoming members of such state retirement system.

The petitioners further rely on regulation 22.8 of the Rules and Regulations of the West Virginia Public Employees Retirement System, which says: "Any employee of a participating employer who is eligible for membership

in another retirement system of a political body shall not be eligible for membership in the West Virginia Public Employees Retirement System." However, this record shows unequivocally that there was no existing pension fund in Nitro in 1961. As stated above, Nitro was under no mandatory duty to establish such fund. It made its election and it is bound thereby. In view of the foregoing, we hold that there is no merit in the contention of the petitioners that they were erroneously made members of the state retirement system.

Having concluded that the firemen of the City of Nitro became members of the West Virginia Public Employees Retirement System in accordance with the law provided therefor, we are now confronted with the question of whether they, constituting a department of a participating employer, may withdraw from such system. They came into the state system under the provisions of Code, 1931, 5-10-16, as amended, which reads as follows: "The state of West Virginia shall become a participating public employer effective July one, one thousand nine hundred sixty-one. Any other political subdivision may by a three-fifths vote of its governing body, or by a majority vote of its electors, elect to become a participating public employer and thereby include its employees in the membership of the retirement system. It shall be the duty of the clerk or secretary of each such political subdivision electing to become a participating public employer to certify the determination of the political subdivision to the board of trustees within ten days from and after the vote of the governing body or the canvass of votes upon such action."

The record of this case shows that the governing body of the subject city, as permitted by Code, 1931, 5-10-16, as amended, adopted an ordinance electing to become a participating employer in the state retirement system. The authority to so act is specifically spelled out in that statute. A careful examination of that statute, and of the whole of Article 10 of Chapter 5 of the Code, fails to reveal any authority to withdraw from the state system. No authority for such action has been cited by the parties to this proceeding.

The retirement system for public employees was created by the Legislature. Its creation and operation were set out in detail by that body. Therein, municipalities and other political subdivisions of the state were permitted, by specified action, to become participating employers in the system. There the authority terminated. It is a well settled principle of law that municipalities have only such legislative powers as are expressly or impliedly delegated to them by legislative acts. *Dotson* v. *Town of Gilbert,* 129 W. Va. 130, 39 S. E. 2d 108. The powers of a municipality are derivative rather than inherent and any action it takes presupposes the existence of authority to perform such act. *State ex rel. The City of Huntington* v. *Heffley,* 127 W. Va. 254, 32 S. E. 2d 456; *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985. In the instant proceeding the Legislature provided in detail for a retirement system for state employees. It authorized the participation therein by the various political subdivisions of the state. No authority was provided in this detailed legislation which would permit their withdrawal from that system.

Although a municipal council which has been granted the power to enact ordinances ordinarily has, as an incident thereto, the power to amend or repeal such ordinances, such principle will not apply "where the ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time fixed by the legislature, which excludes the implication that the common council was given any further authority over the subject than to do the one act." 37 Am. Jur., Municipal Corporations, Section 197. See also 62 C.J.S., Municipal Corporations, Section 435.

Here the Legislature provided in detail the manner in which a municipality may come into a retirement system set up primarily for state employees. The provisions of Article 10, Chapter 5 of the Code constitute a narrow, limited grant of authority to do a single designated thing in the manner fixed by the Legislature. By this legislation a municipality was empowered to do only those things provided for. No grant of power was contained which per-

mitted a municipality to do anything other than to elect to become a participating employer, if it so chose. There was no authority granted which allowed a municipality or a department thereof to withdraw from the state system.

The clear intention of the Legislature in enacting Article 10, Chapter 5 of the Code was to establish a permanent retirement system for state employees and the employees of those political subdivisions which elected to become participating employers. In order for this system to remain actuarially sound it is necessary for the trustees of the fund to know with some certainty the number of employees to be included therein. If participating employers were permitted to join the fund and to withdraw therefrom at their election, the actuarial soundness thereof could never be maintained. With this in mind, it is significant that the Legislature did not provide any manner for a participating employer to withdraw from the state system after making its election to join.

In other jurisdictions it has been widely held that a political subdivision, having elected to join a state retirement system, may not withdraw therefrom in the absence of legislative sanction to do so. In circumstances similar to those in the instant case, a county in the State of New York attempted to withdraw from the state retirement system. In that case, *New York State Employees' Retirement System, et al. v. Board of Supervisors of Tioga County,* 157 Misc. 87, 283 N.Y.S. 405, affirmed 251 App. Div. 198, 296 N.Y.S. 286, affirmed 278 N. Y. 496, 15 N.E. 2d 434, the Court refused to permit such withdrawal, saying: "It is evident that the state, by appropriate legislation, attempted to create a retirement system for its officers and employees and those of such counties and municipalities as by appropriate action approved of the inclusion of its officers and employees. Clearly the Legislature intended this system to be permanent. It gave counties, cities, villages, and towns the right of election to come in. It is significant that it gave them no power to withdraw. The apparent purpose being to create a permanent Retirement System, the power

to withdraw cannot be implied. If it is, a municipality may repeatedly elect to come in or withdraw."

In *People ex rel. Schuwerk* v. *Illinois Municipal Retirement Fund,* 6 Ill. 2d 405, 128 N. E. 2d 923, the Court held that since the City of Chester had elected by ordinance to participate in the state retirement fund and such participation had become effective, it had no authority to withdraw from such fund by thereafter adopting an ordinance purporting to repeal the former ordinance and rescind its participation in the fund. See also *City of Tuscon* v. *Walker,* 60 Ariz. 232, 135 P. 2d 223, and *Thompson* v. *City of Marion,* 134 Ohio St. 122, 16 N. E. 2d 208.

Inasmuch as the petitioners were brought into the state retirement system by the action of the governing body of the City of Nitro, in accordance with the provisions of Code, 1931, 5-10-16, as amended, and since no statutory authority exists whereby they may withdraw from such system, it becomes clear that the respondents had no power to permit such withdrawal. To warrant the granting of a writ of mandamus it must be shown that the petitioner has a clear right to the performance of the thing demanded and that a corresponding duty rests upon the officer to perform that particular thing. 12 M.J., Mandamus, Section 5; *State ex rel. Fox* v. *Board of Trustees of Policemen's Pension or Relief Fund of City of Bluefield,* 148 W. Va. 369, 135 S. E. 2d 262; *State ex rel. Wiley* v. *State Road Commission of West Virginia,* 148 W. Va. 76, 133 S. E. 2d 113; *State ex rel. Alexander* v. *County Court of Kanawha County,* 147 W. Va. 693, 130 S. E. 2d 200; *State ex rel. French* v. *State Road Commission,* 147 W. Va. 619, 129 S. E. 2d 831; *State ex rel. Neal* v. *Barron,* 146 W. Va. 602, 120 S. E. 2d 702; *State ex rel. Evans* v. *Kennedy,* 145 W. Va. 208, 115 S. E. 2d 73.

In the circumstances of this case the petitioners have failed to show a clear legal right to withdraw from the state retirement system; neither have they shown that a corresponding duty rests upon the respondents to permit them to withdraw from such system. Since the petitioners must remain in the West Virginia Public Employees Retirement

System, it necessarily follows that no basis exists for the refund of contributions heretofore made by them into the state fund.

For the reasons stated herein, the writ will be denied and the rule heretofore issued will be discharged.

*Writ denied.*