STATE *ex rel.* PEARL BESS, *et al., etc.*

*v.*

FRANK BLACK, *et al., etc.,* AND
THE COUNTY COURT OF CABELL CO., W. VA., A CORP.

(No. 12383)

Submitted October 20, 1964.     Decided October 23, 1964.

Written opinion filed December 1, 1964.

Calhoun, Judge, dissenting.

*Stanley E. Preiser, W. Dale Greene,* for relator.

*Carl A. McComas,* for respondents.

Browning, Judge:

Petitioners, averring themselves to be eleven qualified voters and residents of Cabell County, West Virginia, instituted this original proceeding in this Court in behalf of themselves and 8,752 other qualified voters and residents of Cabell County seeking a writ of mandamus to compel the respondents, the individual members of the County Court of Cabell County and the County Court of Cabell County, to enter an order calling a local option election in that county pursuant to the provisions of Code, 61-10-28, as amended.

Code, 61-10-28, as amended, provides:

"The county court of any county is hereby authorized to call a local option election for the purpose of determining the will of the voters as to whether the provisions of section twenty-five of this article shall continue in effect in said county.

"A petition for such local option election shall be in the form hereinafter specified and shall be signed by qualified voters residing within said county equal to at least ten per cent of the persons quali-

fied to vote within said county at the last general election. Said petition may be in any number of counterparts and shall be sufficient if substantially in the following form:

"PETITION ON LOCAL OPTION ELECTION RESPECTING WORK, LABOR OR BUSINESS ON SUNDAY IN_____COUNTY, WEST VIRGINIA

"Each of the undersigned certifies that he or she is a person residing in_____County, West Virginia, and is duly qualified to vote in said county under the laws of the State, and that his or her name, address and the date of signing this petition are correctly set forth below.

"The undersigned petition said county court to call and hold a local option election upon the following question: Shall the provisions of section 25, article 10, chapter 61 of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, continue in effect in_____ County, West Virginia?

| "Name | Address | Date |
| --- | --- | --- |
| | | |
| | | |

" (Each person signing must specify either his post-office address or his street number.)

"Upon the filing of a petition for a local option election in accordance with the provisions of this section, the county court shall enter an order calling a local option election and providing that the same shall be held at the same time and as a part of the next primary or general election to be held in said county. Said county court shall give notice of such local option election by publication in two newspapers of opposite politics and of general circulation within said county. Said notice shall be given at least once each week for two successive weeks prior to the date of said election. . . ."

The petition, in substance, alleges the filing of a petition under this section, before October 9, 1964, and after October 1, 1964, signed by 8,763 qualified voters residing in Cabell County and that 5,954 signatures of qualified voters residing in Cabell county were sufficient to comply with the 10% re-

quirement of the statute; the provisions of the statute as to the calling of a local option election are mandatory but the respondents have arbitrarily and capriciously refused to abide thereby; and, the petition is valid in all respects and satisfies all requirements of the statute. The petition then prays for a writ of mandamus directed to respondents commanding them to enter an order calling a local option election to be held at the same time as the next general election to be held November 3, 1964, and to give the required notice thereof.

Filed as a part of the petition are the affidavit of Chad Ketcham, an attorney, who states that a petition in the statutory form, containing the names of 8,763 residents and voters of Cabell County, was filed with the County Court of Cabell County after October 1, 1964, and before October 9, 1964, and the affidavits of three of the petitioners, each of whom states that he is familiar with the petition and that the same was prepared and signed after June 1, 1964, and filed with the County Court at the time previously mentioned.

This Court awarded a rule to show cause why the writ should not issue as prayed for on October 13, 1964, returnable October 20, 1964, and pursuant to the rule, respondents appeared and answered, denying:  that a single petition containing 8,763 names was filed with the respondents; that the petition is valid in all respects and satisfies the requirements of the statute; that the respondents' action in refusing to call said election was arbitrary and capricious; and, that petitioners have shown a clear legal right to the relief sought. The answer then avers that:  five separate petitions were filed, containing 6300, 204, 433, 324, and 1439 signatures, respectively, the first being filed on October 1, 1964, and the last being filed on October 8, 1964, the filing order of the last reciting ". . . Said petitions are hereby filed as a part of the petitions heretofore filed."; the signature of petitioner, Pearl Bess, does not appear on any of the petitions and the signature of petitioner H. L. Markham does not appear on any of the petitions, nor does it appear on the voters' registration records of Cabell County; the signatures of

several of the other petitioners appear multiple times, ranging from 2 to 5, on the petitions, the eleven petitioners thus accounting for eighteen of the purported 8,763 signatures; and, three of the signatures bear dates prior to June 1, 1964, two dated May 28, 1964, and one dated May 30, 1964. The above discrepancies with regard to the signatures are set forth in the affidavit of Elizabeth Daniel, a deputy clerk of the County Court of Cabell County. The answer also avers that, upon the filing of the first four petitions, the respondents directed the County Clerk to ascertain if sufficient signatures of persons qualified to vote appeared on the petitions, individually or collectively, to meet the requirements of the statute with the result that there were insufficient signatures to cause such election to be held. In support of this averment, two certificates of the clerk are filed as Exhibits 8 and 9 with the answer, the first, dated October 7, 1964, certifies that upon a preliminary survey, the petitions were found to contain 6,333 signatures, of which 2,293 were found to be invalid, the remaining 4,040, being less than 5,954, not being checked, and the second certificate, dated October 8, 1964, certifying that upon a further check the petitions were found to contain 7,324 names, of which 1,423 were determined to be invalid, the remaining 5,901 names not being checked.

The answer further asserts: that the question involved herein was submitted to the voters of Cabell County at the primary election held on May 12, 1964, resulting in a "Yes" vote; that such was a final determination of the question in Cabell County; that absentee ballots and the voting machines have already been prepared for the election to be held on November 3, 1964; and, that 667 absentee ballots, on which the question does not appear, have been returned, with the consequent disfranchisement of these 667 voters.

Petitioners demurred to the answer, in substance asserting that the same is insufficient in law and constitutes no defense to the proceeding and replied, in part, attempting to resolve the discrepancies with regard to petitioners' signatures, and challenging the materiality and sufficiency of the various allegations of the answer. Petitioners also moved for a peremptory writ notwithstanding the answer on the

principal grounds: (1) the answer is insufficient in law; (2) petitioners have established a prima facie case which has not been rebutted by respondents; (3) respondents have had six days since service of the rule upon them during which they have adduced no evidence nor made any attempt to adduce any evidence; and (4) the burden is upon the respondents to prove the petition invalid, which they have made no effort to do.

This Court, on October 23, 1964, issued the writ of mandamus sought, directing respondents to enter an order that a local option election be held in the county of Cabell at the general election on November 3, 1964, to determine whether the voters of that county desire that Code, 61-10-25, as amended, remain in effect in that county, and this opinion is now being handed down stating the reasons for such action.

On the return day of the rule theretofore issued in this proceeding the respondents by oral motion of counsel requested a continuance of the hearing for at least three days, which motion, after due consideration, was overruled by the Court. The continuance was denied for the reason that the last of the five petitions, or counterparts, submitted by the petitioners in this proceeding had been filed with the county court on the 8th day of October, 1964, and no effort had been made by the respondents to ascertain the validity of the 1439 names appearing thereon which, if valid, taken together with the names unchecked on the previous counterparts, would have constituted more than 10% of the voters of that county. Furthermore, the pertinent statute provides that the county court shall give notice to the citizens of a county when such an election is to be held by advertising such twice not less than one week apart in newspapers of general circulation in such county. If this Court had granted the continuance until Friday, October 23, 1964, and the case had been submitted for decision on that day it would have been virtually impossible for the Court to have considered the matter and handed down its decision in time for two such publications to be made prior to the election and at least one week apart. It is the view of this Court that the five peti-

tions, or counterparts, should have been treated as one petition and the respondent county court was apparently of the same view, for upon the filing of the last petition on October 8, 1964, the order recited "Said petitions are hereby filed as part of the petitions heretofore filed". Upon this question see *Leigh* v. *Hall* (Ark., 1960), 339 S. W. 2d 104; *Hammett* v. *Hodges* (Ark., 1912), 149 S. W. 667. The Court is also of the opinion that the reason assigned for the rejection of certain signatures upon the petitions, that is, where the street number or the date of the signing was filled in by some person other than the signer, as shown by respondents' Exhibit 14, was not valid. *Widick* v. *Pursifull* (Ky., 1945), 187 S. W. 2d 447. See also, *State ex rel. Noyes* v. *Lane,* 89 W. Va. 744, 110 S. E. 180.

The respondents by their answer raise the question of whether under the applicable statutory provision, Code, 61-10-28, as amended, which provides: "The county court of any county is hereby authorized to call a local option election for the purpose of determining the will of the voters, . . ." more than one election may be held to determine the issue. It is the contention of the respondents that, inasmuch as such a local option election was held in the county of Cabell at the primary election of May 12, 1964, the respondents are not required to and are without authority to call another local option election for the same purpose. This Court is not in agreement with that contention and believes that if the legislature had so intended it easily could have, and would have, said so. The absence of any language to that effect, we believe, is conclusive of the question and shows that more than one local option election could be held in the county if a valid petition were timely filed prior to a general or special election. This Court, in *Cohen* v. *Securities Co., et al.,* 96 W. Va. 676, 123 S. E. 793, found similar language in a restrictive covenant of a deed which was in controversy to be not so restrictive. This was the controversial language of the deed: "Party of the second part (grantee) covenants and agrees for itself and assigns that the said lot hereby conveyed shall never be used for the purpose of constructing flats or apartments thereon, and that no house shall be built on said lot nearer to Quarrier Walk than the

house now owned and occupied by Oscar Nelson, and that no dwelling house shall be built upon the said lot except a one-family house. . . ." The Court, in discussing this provision, said: "Upon the theory that the indefinite article 'a' means 'one', the plaintiffs contend that the words, 'a one-family house' as used in the covenant create a *numerical* limitation, confining the number of residence structures to be build on the lot to *one* one-family house. On the other hand, defendant Mortgage Securities Company insists that such is not the true intention or meaning of the covenant and that the words 'a one-family house' are merely descriptive of the generic character or quality of the resident structures which may be erected; and that the article 'a' is used only for the purpose of euphony in the grammatical construction of the sentence, and not as a word of numerical limitation. In other words, no dwelling house should be constructed which may be designed for the use of more than one family. . . ." See also Code, 2-2-10 (a), and Vol. 1, Words and Phrases, pp. 4, 5.

It is true that Code, 61-10-28, as amended, provides in this language for the submission of this issue to the voters of a county: "The ballot to be used in said local option election shall have printed thereon substantially the following: 'Shall the Sunday Closing Law continue in effect in_____ _____County of West Virginia? _____Yes _____No.' " and it was ably argued by counsel for the respondents that this language is conclusive or at least persuasive upon his contention that this question could not be submitted to the voters of a county more than once. Certainly it may be conceded that that language is persuasive upon the question of whether such local option election could be again held in a county which had elected to eliminate the provisions of the Sunday Closing Law and petitioners sought to have another election to reinstate the law. However, we do not have such an issue before us and shall not attempt to pass upon that supposititious situation. Suffice to say that in the case before us, the legislature, if it so intended, could have easily obviated the issue by using the specific word "one" in the appropriate places rather than the generic article "a". Respondents denied generally the allegations of paragraph 11

of the petition, that is, that the petition filed with the county court "is valid in all respects and completely satisfies all the requirements of the statute . . .", and this denial, taken in context with the following allegation contained in the respondents' answer, to which the petitioners demurred, caused this Court some concern. In other words, by their demurrer, they admit so much of it as is well pleaded:

"1. The respondents aforesaid deny the allegations contained in Paragraph I of the Petitioners' Petition, and in further support of said denial say that they are informed and do believe that:

" (a)  There has been no single petition filed which contains 8,752 names of persons qualified to vote in Cabell County, West Virginia, and further say that five separate petitions, each composed of a number of counterparts, have been filed or lodged with said County Court.  True copies of the certificates requesting filing of each of those said petitions are attached hereto and made a part hereof, marked as Respondents' Exhibits, 1, 2, 3, 4, and 5."

It is the contention of counsel for the respondents that by demurrer to that provision of the answer the petitioners put themselves out of court.  A careful reading of this allegation of the answer does not deny that any valid signature was contained on the petitions filed with the county court and that all such signatures were invalid for one reason or another, but it states only that no *single* petition was "filed which contains 8,752 names of persons qualified to vote in Cabell County".  The pertinent statutory provision provides that those who would seek a local option election upon this question must file with the county court at a time not specified the signatures of at least 10% of the registered voters of that county and, as heretofore stated, proper certification as to the validity of the names upon those petitions.  The county court, upon the filing of the first four of these petitions containing the names of 7,261 professed voters of Cabell County, directed its clerk to make an investigation to determine whether the names contained on those petitions were qualified voters of Cabell County, and, pursuant to that investigation, 1,423 signatures thereon were found to be invalid for one reason or another, leaving unchallenged 5,901 names.

However, it was necessary to secure the names of 5,954 voters of that county to constitute 10% of the registered voters thereof and no further checking was made of the signatures on the first four petitions inasmuch as the respondents considered it unnecessary. Thereafter, and on October 8, 1964, a fifth petition was filed containing 1,439 additional signatures, which, added to the 5,901 unchecked names, constituted more than the necessary 10% required. The members of the county court made no investigation of the signatures on the fifth petition and the only reason given therefor was the oral statement made by counsel for the respondents in seeking a three-day continuance to the effect that counsel for the petitioners prior to the filing of the last petition had indicated or agreed that the matter would not be pursued further. However, when asked whether counsel who represented the petitioners in this Court or their former counsel submitted the fifth list of names, counsel for respondents conceded that it was one of the attorneys of the firm which had represented the petitioners before the county court. This Court then had no recourse but to find that there were sufficient unchallenged names upon the petition to require this question to be submitted to the voters of Cabell County on November 3, 1964.

Certainly it could not be seriously contended by anyone that the members of the county court, when confronted in this Court by a proceeding in mandamus upon the face of the record of which there appeared to be a sufficient number of signatures to require the submission of the question to the voters of a county, could shift the responsibility for establishing before this Court the validity thereof to the petitioners rather than for that responsibility to fall upon the members of the county court. If that were true, there would probably never be held any such election if the county commissioners did not desire to hold one. If the petitioners in mandamus could be required to again prove the validity of the signatures upon their petitions, after having complied with the statute by doing it once, it would probably be impossible for the citizens of any county to secure a local option vote upon this question. See *State ex rel. Plymale* v. *Garner*, 147 W. Va. 293, 128 S. E. 2d 185.

Respondents also raise the question of the timeliness of the filing of the petition with the county court, and this Court can readily appreciate the problems with which a governmental body is faced when presented with a petition requiring the number of signatures involved herein. However, in the absence of a definite date having been fixed by the legislature for the filing thereof, we cannot say that the time of the filing of the final petition in this case was not within a reasonable time prior to the election and that the petition herein was not duly filed. See *State ex rel. Zagula* v. *Grossi,* 149 W. Va. 11, 138 S. E. 2d 356; *State ex rel. Plymale* v. *Garner,* 147 W. Va. 293, 128 S. E. 2d 185. It may be true as contended by the respondents that some voters of Cabell County who vote by absentee ballot will be deprived of the privilege of voting on this question, but as to this contention we believe that the following comments from the opinion of *State ex rel. Revercomb* and *State ex rel. Hill* v. *O'Brien, Secretary of State,* 141 W. Va. 662, 91 S. E. 2d 865, are analogous:

> "If those who have the responsibility of distributing ballots to voters of this State, who will be members of the armed services on the 8th day of May, 1956, exercise due diligence, there will be few, if any, such voters who will be deprived of the right to vote for a candidate for the nomination for the office of United States Senator. The only other alternative for the selection of candidates for that office is the holding of party conventions, and, in such cases, few, if any, citizens of this State who are in the armed services would have an opportunity to participate in such selections. We believe it to be the policy of the lawmakers of this State to permit the voters generally to participate in the selection of candidates for all offices in primary elections whenever possible, and have given consideration to that fact in arriving at our decision as to the legislative intent when Chapter 90 was enacted in 1951. Even though such interpretation of the provisions of Chapter 90 may result in some voters in the armed services, who make early requests for absentee ballots, receiving a ballot containing all of the candidates of his political party, except those for United States Senator, all of the civilian voters of this State and most of those in the armed services

will have an opportunity to select nominees for all offices to be voted on at the May 8 primary election. It is better that a few be deprived of the opportunity to vote for candidates for one office than that the electorate of the entire State be prevented from selecting nominees for this office by primary election in keeping with the public policy of this State. . . ."

If due diligence had been used by the respondent members of the county court it is certain that more voters who voted by absentee ballot in Cabell County would have had an opportunity to vote upon this question.

The applicable statutory provision is clear and unambiguous. Therefore it is not subject to construction or interpretation by this Court, but must be applied in accordance with the intent expressed therein. This rule applies whether the written instrument be a provision of a constitution, a legislative act or any other written instrument. This is the first syllabus point in the case of *Cotiga Development Co.* v. *United Fuel Gas Co.*, 147 W. Va. 484, 128 S. E. 2d 626: "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." To the same effect is *Lewis* v. *Dils Motor Company*, 148 W. Va. 515, 135 S. E. 2d 597. Further reference is made to many decisions of this Court cited in the opinions in the two above cited cases. In considering this provision, it is basic to consider that this and all other courts of this land have adhered to certain rules for ascertaining the intent of any written instrument. If the language used be clear and unambiguous, it simply applies the language used to the factual situation. If it is found to be ambiguous, the applicable rules are used to ascertain its meaning and, if the language thereof be irreconcilable, rules are equally well established for determining the dominant intent in the circumstances. However, no court under our system of jurisprudence has yet laid down a rule by which it may be determined into which of these categories the controverted language of a writing falls. That must be determined upon the facts of each particular case.

We reserve the question raised by petitioners as to the right of the county court to delegate to the clerk of that court or to any other persons the authority to summarily remove signatures from such a petition as this question is not reached in view of the decision herein.

For the foregoing reasons, we therefore hold that the petitioners have shown a clear legal right to a writ of mandamus commanding the relief demanded of the County Court of Cabell County and the individual members thereof.

*Writ awarded.*

CALHOUN, JUDGE, dissenting:

Very respectfully, but quite earnestly I dissent. With deference to my four associates, I believe that the majority opinion in relation to the basic questions decided has asserted propositions which are utterly at variance with legal principles which I have conceived to be both fundamental and clear.

My paramount disagreement is based on my confident belief that the majority opinion, in authorizing this second local option election, has read into the statute a provision which the legislature, in its wisdom and discretion, might have inserted, one which so easily could have been inserted, but one which, for sound reasons and common sense, the legislature may have studiously and designedly declined to include.

The statute is *sui generis.* The portion with which we are concerned deals solely with a legislative grant to county courts of authority to hold local option elections in respect to the Sunday Closing Law. It deals with that and nothing more. It is complete in itself. It is not in any sense related to or in *pari materia* with primary and general election laws which provide for the nomination and election of public officials. Therefore, the case of *State ex rel. Revercomb* v. *O'Brien,* 141 W. Va. 662, 91 S. E. 2d 865, cited in the majority opinion, is in no sense in point.

County courts have no inherent powers. They have only such powers as are granted to them by the Constitution and the legislature, perhaps including such additional powers as

are necessarily implied in those expressly granted. *Mohr v. County Court of Cabell County et al.,* 145 W. Va. 377, 115 S. E. 2d 806. The County Court of Cabell County had no right, power, authority or jurisdiction to hold a second local option election unless the power to do so was granted to it by the statute.

Elections are purely creatures of statute. No governmental body has any inherent power, right, jurisdiction or authority to hold any election, general or special. A county court has no inherent right, power, authority or jurisdiction to authorize qualified voters to vitiate or nullify, in whole or in part, a state legislative enactment. If the county court has authority to authorize a second local option election, or an endless succession of local option elections on the single issue provided by statute, that authority must be granted by the statute itself. It can emanate from no other source. 16 C.J.S., Constitutional Law, Section 142, page 682; 29 C.J.S., Elections, Sections 66, 67, 69 and 82, pages 90, 91, 92 and 106; 18 Am. Jur., Elections, Sections 2 and 6, pages 179 and 182.

The legislature put the Sunday Closing Law in effect throughout the State. Therefore, there was no occasion for the legislature to provide for a local option election in any county to determine by popular vote whether the Sunday Closing Law should become operative, or should continue to be operative in such county. To that extent the people, through their legislative representatives, have already spoken. The reason for the legislature's failure to provide other than for the single issue to be voted on is, therefore, obvious.

The legislature, therefore, added to the Sunday Closing Law a provision to authorize any county court "to call *a local option election* for the purpose of determining the will of the voters", (italics supplied) as to whether the law should continue in operation within that county. The legislature could have provided for a succession of elections and could have provided for a minimum of time required to elapse between such elections, as similar statutes so generally do. It did not do so. The statute does not contain the slightest suggestion of a grant of authority to hold more

than one election, and that to be upon the one, single issue prescribed by the statute.

Within a period of weeks prior to the date the Court announced the majority decision in this case, it announced a unanimous opinion in another case which, in my judgment, wholly supports the views I have undertaken to express to this point, a unanimous opinion which, in my judgment, is completely at variance with the majority opinion in the present case. I refer to the case of *State ex rel. McDaniel et al. v. Duffield et al.*, 149 W. Va. 19, 138 S. E. 2d 351. In that case members of the fire department of the City of Nitro sought to withdraw from the state public employees retirement system and to receive a refund of contributions made. The Court held that, the matter being wholly statutory, and the City of Nitro having elected to become a participating employer under the state retirement plan, it could not withdraw because the statute contained no provision for such withdrawal. The Court stated (138 S. E. 2d at page 355): "The powers of a municipality are derivative rather than inherent and any action it takes presupposes the existence of authority to perform such act."

I dissent also because:

(1)  I believe that the tardiness of the petitioners' application to this Court has caused the Court to be stampeded into almost unprecedented haste, denying to the respondents even reasonably adequate time to defend and depriving the Court of reasonably adequate time to study, consider and decide the important and difficult questions presented for decision.

(2)  The Court decided the case on unresolved issues of fact presented by allegations of the mandamus petition, a thorough and complete denial of such allegations by answer, without permitting or requiring such unresolved issues of fact to be determined by proof.

(3)  The answer alleged hundreds of instances of false and fraudulent signature, including duplications of signature, signatures of persons not registered to vote, signatures of persons residing not only outside Cabell County but also

outside this state, and various instances in which petitioners in this very mandamus proceeding had signed the petition more than once. These allegations were admitted to be true by petitioners' demurrer to the answer. In spite of all this, the Court granted the relief prayed for by the petitioners.

(4) By some sort of legal legerdemain or manipulation of judicial language, the Court held that the burden was cast upon the respondents, despite the admission that the petition was in a great measure false and fraudulent, to prove negatively that the petition *did not* contain a sufficient number of genuine signatures of persons eligible to vote in Cabell County. The issue of fact concerning the genuineness and sufficiency of the signatory petition was directly raised by a categorical denial paragraph by paragraph of every essential of the mandamus petition, supplemented by reference to hundreds of instances of false and fraudulent signatures.

(5) The Court avoided reference to any presumption in relation to the signatory petition in the circumstances of this case, though this was one of the main points of concern during oral argument.

It is my understanding that we indulge in presumptions of regularity or integrity when nothing to the contrary appears. No presumption can stand in the face of facts. *Dwight* v. *Hazlett,* 107 W. Va. 192, 200, 147 S. E. 877, 880, citing Wigmore and Jones in their respective works on Evidence. See also *Beckley National Exchange Bank* v. *Providential Life & Accident Ins. Co.,* 121 W. Va. 152, 154, 2 S. E. 2d 256, 257; *Lambert* v. *Metropolitan Life Ins. Co.,* 123 W. Va. 547, 17 S. E. 2d 628; *Jenkins* v. *Spitler,* 120 W. Va. 514, pt. 2 syl., 199 S. E. 368; *State* v. *Dodds,* 54 W. Va. 289, 296, 46 S. E. 228, 231; 7 M.J., Evidence, Section 17, page 347; 31A C.J.S., Evidence, Section 117, page 210. In line with the legal principle referred to immediately above, it was held in *State ex rel. Mc-Nary* v. *Olcott,* 62 Ore. 277, pt. 4 syl., 125 P. 303: "Where referendum petitions contain evidence of forgeries, perpetrated either by the circulators, or with their connivance, the *prima facie* case in favor of the genuineness of the petitions is overcome; and the burden is on those upholding the validity of the petition to establish the genuineness of each

signature." To the same effect, see 28 Am. Jur., Initiative, Referendum and Recall, Section 25, page 453.

Mandamus is not a writ of right. Almost to the point of triteness and monotony, this Court has reiterated the proposition that one seeking relief by mandamus must establish "a clear legal right" to the relief he seeks. The burden of proof is on the plaintiff, upon the petitioner in mandamus. While the burden of going forward with the evidence may shift, the burden of proof never shifts. *Brace* v. *Salem Cold Storage, Inc.*, 146 W. Va. 180, pt. 4 syl., 118 S. E. 2d 799. Nevertheless, on some basis I am unable to comprehend, the Court has relieved the petitioners, on the factual issue so clearly presented, of the burden of proving "a clear legal right" to the relief sought, but in some way has cast on the respondents a burden of proving negatively the essential facts which should lie peculiarly within the knowledge of the petitioners.

During the course of the oral arguments, the contention of counsel for the petitioners, as I understood it, seemed to be substantially to this effect: Though we admit, expressly or tacitly, by demurrer or otherwise, that hundreds of signatures on the petition are not genuine, and that some of the mandamus petitioners signed the petition various times each, and that it follows that, *pro tanto* at least, the petition is false and lacking in genuineness, still we claim we are entitled to the benefit of a presumption that *the balance* of the petition is true and genuine. A startling, bold contention, to say the least! While the Court avoided a discussion of this proposition in its opinion, it is difficult to conceive how the Court could have decided as it did without acceding to this fantastic contention made by counsel for the petitioners.

(6) The Court states that the language of the statute is "clear and unambiguous" in the grant to the county court of a right to hold more than one local option election on the single issue the legislature provided for submission to the voters; and impliedly the Court holds that the statute, by clear and unambiguous language, has granted to the county court the power to hold an endless succession of such elections at each primary and general election for years without

limit until opponents of the Sunday Closing Law receive the favorable vote they desire. The Court casually and adroitly avoids saying whether thereafter there could be another election. In such an election, the sole issue provided by the statute would be quite awkward and inappropriate, to say the least. Of course, the Court might, in such a case, say that the language of the statute is "clear and unambiguous" in granting to the county court a right to hold an additional local option election, at the instance of *proponents* of the Sunday Closing Law, on an issue suitably framed for that purpose, to determine whether the Sunday Closing Law should again become effective within the county. On the other hand, if, as I apprehend, the Court would be unable to find in the statute a grant of such authority, I believe it must follow that the Court in this case has reached a result of quite questionable constitutionality. I do not believe the Court had a right to avoid a decision of that question presented in this case.

A point I wish to emphasize is that the Court failed to point out anywhere in its opinion the precise "clear and unambiguous" language of the statute *which grants to the* county court the right or authority to call the second election on the single issue upon which the will of the electorate previously had been determined.

Language of a statute which is clear and unambiguous cannot be construed but must be applied in accordance with the legislative will clearly expressed. That is the holding of the Court. It should not have been difficult for the Court, therefore, to have referred definitely, precisely and readily to the "clear and unambiguous" language by which that power was granted by statute to the county court. At that point I find two interesting things in the majority opinion:

(a) The majority opinion places considerable emphasis on *Cohen* v. *Mortgage Securities Co., et. al.,* 96 W. Va. 676, 123 S. E. 793, in which the Court held that the indefinite article "a" when used in a restrictive covenant was used in a generic sense and included a reference to more than one "one-family house." From this it is reasoned by the majority opinion that the phrases in the statute, "a local option

election" (used at least twice), "a petition" (used at least twice), "said petition," "the county court shall enter an order," "such local option election" and "prior to the date of said election" are used in a similar sense and refer to the plural, apparently in numbers without limit. According to my comprehension and understanding of such matters, the Court, in its reference to and application of the *Cohen* case was getting precariously close to "construing" the "clear and unambiguous language" of the statute; so close, in fact, that I am unable to discern or comprehend the difference.

(b) Another remarkable thing about the majority opinion, the one which takes me finally back to my beginning point, the point of our sharpest disagreement, is stated in the second point of the syllabus as follows: *"In the absence of a clear intent to the contrary appearing from the language therein,* Code, 61-10-28, as amended, will be regarded as providing for more than one local option election * * *."* (Italics supplied.) The same proposition is stated in the opinion. After referring to the contention that the statute does not grant authority to the couny court to submit again to the electorate the statutory issue upon which "the will of the voters" had been ascertained in a local option election previously held pursuant to the statute, the Court stated: "This Court is not in agreement with that contention and believes that *if the legislature had so intended it easily could have, and would have, said so. The absence of any language to that effect, we believe, is conclusive of the question and shows that more than one local option election could be held* * * *."* (Italics supplied).

As I read these quotations from the syllabus and from the opinion, they represent a holding that the legislative grant to the county court of this power or authority to hold an additional local option election *flows necessarily from the failure of the legislature expressly to negate or to prohibit the the exercise of the right, power or authority.* To me the language can have no other meaning. Indeed, I cannot conceive of any other method of reasoning by which the Court could have reached the result it reached in the case. To me this is a novel, startling and wholly unsound doctrine. Such

right, power or authority, not being inherent in the county court, could not emanate from *any source other than from a statutory grant thereof.* The majority opinion, I believe, flagrantly omits any reference to any statutory language by which such right, power or authority was created or granted.

For the reasons stated, I would have denied the writ.