A. M. HOWELL et al., Petitioners,

v.

John M. WILSON, County Judge of Russell County, Respondent.

Court of Appeals of Kentucky.

Oct. 11, 1963.

Charles C. Adams, Adams & Adams, Somerset, for petitioners.

W. E. Coffey, County Atty., Leonard Wilson, Jamestown, for respondent.

STEWART, Judge.

This proceeding seeks to compel the county judge of Russell County to call an election to take the sense of the voters of that county to determine whether a portion of it shall be detached therefrom and joined to Pulaski County.

On July 8, 1963, a petition signed by 123 citizens and residents of the Jabez Precinct in Russell County was filed with respondent, John M. Wilson, county judge of that county. The petition requested that the county court enter an order calling for a county-wide election on the proposition of striking the territory encompassed in the Jabez Precinct from Russell County and attaching it to adjoining Pulaski County. Such procedure is authorized by Section 65 of the Constitution of Kentucky and by KRS 67.030. Prior thereto, on June 13th, a petition signed by 106 citizens and residents of the same precinct who were opposed to the calling of such an election was filed with the county clerk. It was presented to respondent county judge on July 8th.

Respondent deferred action on the petitions pending an examination of them. On July 11th he entered an order refusing to call an election. The basis for the denial was that in Jabez Precinct there were listed 207 registered voters. The petitions were studied and it was found 33 persons signed both of them. Respondent deleted these duplicates, leaving only 87 names on the original petition. Since 87 represents 17 less than the majority of the 207 registered voters in the affected area and since Section 65 of the Constitution of Kentucky, as well as KRS 67.030, requires that a majority of the voters living in such territory must sign the petition, respondent refused to call the election.

Petitioners then filed an affidavit with respondent, alleging that a number of the registered voters in Jabez Precinct were not legally qualified and asking that he purge certain named voters and rule that there are only 166 legal voters actually living within the precinct. Respondent refused to comply with this request, taking the position that purgation is not within his authority; that the county purgation board is solely empowered to determine who are properly registered; and that, if the purgation board did act so as to drastically reduce the number of voters on the registration list, he would reconsider his ruling on the original petition.

Petitioners then challenged specific voters as provided by KRS 117.810, but the purgation board, when called upon to consider these persons, refused to act.

Petitioners have instituted this proceeding before us for an order of mandamus, requesting this Court to direct respondent to call an election on the question presented by the original petition.

The cases that have discussed the words "voter," or "legal voter," or "qualified voter," in respect to whether registration is a necessary requisite to constitute a person as such, have been varied in their holdings. The accompanying language of the particular statute in which the one or the other of these expressions appears has been held to be a decisive factor. Such a question usually arises where, as here, a statute requires that a petition calling for an election on a public question be signed by a designated number of "voters," or "legal voters," or "qualified voters."

■ This Court has reviewed its cases on the point and has decided that, in addition to the prescribed constitutional and statutory requirements, registration is one of the essential elements of a voter, legal voter, qualified voter, or the like. See Coffey et al. v. Anderson, Judge, etc., Ky., 371 S.W.2d 624.

In reviewing the two petitions, one "pro" election and one "anti" election, respondent determined that a person who had signed both had actually done nothing (as in the case of a ballot in an election marked for each of the opposing candidates for the same office) and so deleted the names of those persons that appeared on both petitions.

■ In the Annotation in 126 A.L.R. 1031 and 1039 through 40, it is stated that signers of a petition may withdraw therefrom before the petition is "acted upon," citing O'Neal v. Minary, 125 Ky. 571, 101 S.W. 951; Davis v. Henderson, 127 Ky. 13, 104 S.W. 1009; Barton v. Edwards, 143 Ky. 713, 137 S.W. 218. In 18 Am.Jur., Elections, sec. 103, p. 245, it is stated: "* * * that the signing of a petition is not an irrevocable act, but that anyone may withdraw his support of such petition before action thereon has been taken."

Evans v. Maddox, Judge, Ky., 260 S.W.2d 661, was a case where a petition was filed for an election to be called to determine whether or not the commission form of government should be terminated in Middlesboro. While a hearing was in progress on the petition a large number of signers sought to withdraw their names which, if allowed, would have rendered the petition insufficient. The county judge refused to permit the withdrawals. This Court, in upholding his action in this regard, said:

"We are of the opinion that in a case of this character, involving a petition filed with a court seeking an election on a public question, the petitioners should not be permitted, merely because of a change of mind, to withdraw their names after the petition has been filed.

Having invoked the processes of law and the machinery of the court in respect to a matter of public concern, the petitioners should not be allowed to treat the matter as one solely of their private concern, and dismiss the court as though the court was merely their agent. It is entirely foreign to our concept of the orderly processes of law that a court should be compelled to sit by as a mere spectator while the sponsors and opponents of a petition filed with the court engage in a contest behind the scenes to determine whether the petition will stay in court."

In the present case, apparently three petitions were circulated. The first, which was "pro" election, is not in the record. The second, which was "anti" election, was dated May 21, 1963, filed with the county clerk on June 13th and presented to respondent on July 8, 1963. The third, which was also "pro" election, stated inter alia that "* * * the signing of this petition on the said date is a ratification or confirmation of any petition heretofore signed requesting that the aforesaid described territory be stricken from Russell County and attached to Pulaski County, or revokes and disavows any petitions signed heretofore in opposition to the proposal. * * *" This last petition was signed between July 5th and July 8th, as shown by the dates following the signatures, and presented to respondent on July 8th.

■ Following the precepts outlined above, it appears respondent acted erroneously in striking any of the duplicates. He should have taken the last petition (the "pro" petition), when filed, to be the sense of the signers. The "anti" petition was a nullity. As all these signers apparently are voters as defined hereinbefore and their total amounts to more than a majority in the territory, we conclude respondent erred in dismissing the "pro" petition.

■ Respondent, however, had the duty to examine the petitions before calling or

refusing to call the election. As stated in 18 Am.Jur., Elections, sec. 102, p. 244: "There is no presumption that the signers of a petition are qualified electors, and in the absence of any provision of law to the contrary, the duty of determining whether a petition presented is in accordance with the requirements of law falls upon the officers to whom it is presented and who are to call the election." In Commonwealth ex rel. Meredith v. Fife, 288 Ky. 292, 156 S.W.2d 126, in a case dealing with the calling of an election relative to the building of a county health department, this Court said: "We assume, of course, that a bona fide petition was filed in this instance. If not, the county judge would not be required to call an election."

In a case such as this the county judge may proceed ex parte to determine the sufficiency of the petition, and, if he deems it necessary, may satisfy himself that the signatures are genuine, that the signers are bona fide voters, and that the total names affixed to the petition constitute the required percentage of qualified voters. See Stieritz v. Kaufman, 314 Ky. 10, 234 S.W.2d 145.

However, in view of Hettich v. Colson, Ky., 366 S.W.2d 907, and Cunnigan v. Jones, Ky., 371 S.W.2d 624, the circuit court also has jurisdiction to provide adequate relief in respect to the matter before us, therefore, under similar circumstances this Court henceforth will not exercise original jurisdiction.

Upon reconsideration of the petition, if respondent determines that a majority of the bona fide voters of Jabez Precinct favor the calling of such an election, he will set a date therefor. Nevertheless, as it is too late to comply with the 60-day-advertisement requirement of KRS 67.030(2) for the election to be held on November 5, 1963, it will be necessary that respondent order it to be held on the day of the 1964-general election.

Wherefore, an order of mandamus is granted.