STATE OF WEST VIRGINIA *ex rel.* VIRGIL RIFFLE, who sues for himself and for the benefit of and on behalf of others who are similarly situated

*v.*

CITY OF CLARKSBURG, A WEST VIRGINIA MUNICIPAL CORPORATION; RAY M. PAYNE, *Mayor* of the CITY OF CLARKSBURG; NEWTON M. CALLAHAM, *City Manager* OF THE CITY OF CLARKSBURG; MILDRED ZINK, *City Clerk* OF THE CITY OF CLARKSBURG; *and* RAY M. PAYNE, KENNETH L. TRIMBLE, JAMES CARTER, L. W. KENNEDY, GEORGE EICHER, RICHARD V. LYNCH, JR., *and* WILLIAM LEAR, *as Members of the Council* OF THE CITY OF CLARKSBURG

(No. 12724)

Submitted April 16, 1968.   Decided Prepared Order 6/11/68
(Opinion filed 7/9/68)

*Donald R. Wilson,* for relator.

*Daniel L. McCarthy, Johnson and Johnson, William G. Johnson,* for respondents.

CALHOUN, JUDGE:

In this original proceeding in mandamus, Virgil Riffle, the petitioner, a resident and voter of the City of Clarksburg, seeks to require the respondents, the municipal corporation, its mayor, city manager, clerk and the members

of the city council to hold an election pursuant to the provisions of Code, 1931, 8-4-20, as amended, to determine whether a certain municipal ordinance providing for assessment and collection of a fire service fee shall be effective.

The ordinance in question, as amended and reenacted by the city council on July 6, 1967 for the purpose of increasing the rate of the existing fire service fee, contains the following provision: "This ordinance shall be and become effective on the 31st day of December, 1967. The first collection year hereof shall begin on January 1, 1968 and terminate on December 31, 1968 and each collection year thereafter shall be for a like calendar period."

The mandamus petition with exhibits and a note of argument in support thereof were presented to the Court and filed in the office of the clerk on January 16, 1968. On January 22, 1968, a rule in mandamus was awarded, directed to the respondents and made returnable on February 6, 1968. The case was continued and set for argument before the Court on April 16, 1968, at which time the case was submitted for decision upon the mandamus petition with exhibits attached thereto and made a part thereof; upon the answer with exhibits and the demurrer to the petition presented and filed in behalf of all the respondents, except Kenneth L. Trimble and L. W. Kennedy, two of the seven members of the city council; upon the separate answer of Trimble and Kennedy, which answer either substantially admits or fails to deny the material allegations of the petition but alleges that Trimble and Kennedy, as councilmen, voted to accept and that they continue to favor the voters' demand that an election be held; upon the demurrer of the petitioner to the answer filed in behalf of all the respondents except Trimble and Kennedy; upon a written stipulation of facts entered into and filed by and in behalf of the petitioner and all the respondents except Trimble and Kennedy; and upon the written briefs and oral argument of counsel.

The language of Code, 1931, 8-4-20, as amended, so far as pertinent, is as follows:

> "The governing authority of every municipal corporation that furnishes any essential or special

municipal service, including police and fire protection, * * * may by ordinance provide for the continuance, maintenance, installation or improvement of such service, may make reasonable regulations with respect thereto, may impose upon the users of such service reasonable rates, fees and charges to be collected in the same manner as municipal taxes are collected * * *. * * *: Provided, however, that any ordinance enacted under the provisions of this section shall be published as a Class II legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this Code, and the publication area for such publication shall be such municipality. In the event thirty percent of the registered voters by written petition duly signed by them and filed with the municipal authority within fifteen days after the expiration of such publishing protest against such ordinance, the ordinance shall not become effective until it shall be ratified by a majority of the votes cast by the duly qualified voters of such municipality at an election duly and regularly held as provided by the laws and ordinances of the municipality and the result of such election ascertained and declared. * * *."

By an order entered on June 11, 1968, the Court held and adjudged that the petitioner had failed to show that there was presented to and filed with the respondents, or with any municipal authority, a timely petition duly signed by thirty per cent of the registered voters of the City of Clarksburg, as required by the provisions of Code, 1931, 8-4-20, as amended; that, therefore, the petitioner had failed to show a clear legal right to the relief prayed for in the mandamus petition; and, accordingly, the writ of mandamus as prayed for was denied. Pursuant to a reservation in the order of the right to do so, the Court files this written opinion setting forth in greater detail its reasons for the decision announced by the order.

In the mandamus petition, the petitioner alleges that he was one of 6,822 "signers" of a petition filed with the respondents in conformity with the provisions of the pertinent statute for the purpose of protesting against the ordinance which was amended and reenacted by the municipal council on second and final reading on July 6, 1967;

that the ordinance was published in two newspapers published in the City of Clarksburg on June 22, 1967, and June 29, 1967; that the petition consisted of 293 pages containing 6,528 "names" filed on July 13, 1967, and 18 pages containing 294 "names" filed on July 20, 1967; that the city, by its agents, servants and employees, obtained a petition alleged to contain the signatures of 261 persons requesting withdrawal of their respective signatures from the protest petition and that such action was "completely unauthorized and unwarranted and in derogation of the statutory rights of your petitioner and those for whose benefit he sues"; that the city council, at a meeting held on September 7, 1967, by a four to two vote of the six councilmen present, rejected the petition filed for the purpose of protesting the ordinance; that there were 17,616 duly registered voters in the City of Clarksburg; that, therefore, the petition containing 6,822 names of signers contained a number of signatures in excess of the thirty per cent required by statute; and that whether the "supplemental petition" filed on July 20, 1967, "be considered validly filed or not", the remaining portion of the petition, nevertheless, contained signatures of more than thirty per cent of the duly registered voters in the city. The mandamus petition concludes with a prayer that the respondents be required to hold an election pursuant to the provisions of the statute and that meantime the ordinance be declared not effective unless and until ratified by a majority of the votes cast by duly qualified voters at such election.

The answer filed in behalf of all the respondents, except Trimble and Kennedy (which may be referred to hereafter merely as "the answer"), denies that the protest petition contained signatures of 6,822 duly qualified and registered voters of the City of Clarksburg; denies that the 293 sheets of the petition filed on July 13, 1967, contained 6,528 signatures and alleges "that many of the signatures contained thereon were forgeries, duplicates and/or affixed by persons not residing within the municipality and/or by persons not duly qualified or registered voters within the municipality"; alleges that the portion of the

alleged petition consisting of 18 sheets allegedly containing 294 signatures, filed on July 20, 1967, was improper because it was not filed as required by the statute within fifteen days after the second and final publication of the ordinance on June 29, 1967; that 261 signers of the protest petition signed and filed withdrawal forms, the signatures thereon having been acknowledged before notaries public, by which their signatures on the protest petition were properly withdrawn "prior to the Council's taking formal action on said Petition"; admits that the municipal council, at its regular meeting held on September 7, 1967, by a vote of four to two of the councilmen present and voting, rejected the protest petition but "only after it had been made patently obvious by the report of the City Clerk of the City of Clarksburg, delivered at said open and public meeting, and dealing with her efforts to verify the voters registration status of the persons allegedly signing said Petition," that it did not contain thirty per cent of the qualified and registered voters of the city. Attached to the answer, as Exhibit No. 1, are the original 307 sheets of paper, filed as the protest petition, accompanied by an affidavit of the city clerk verifying the identity of the 307 sheets of paper, and stating that the total number of names appearing thereon is 6,771.

The answer alleges that the aggregate number of sheets of the alleged petition contained a total of 6,771 "names" rather than a total of 6,822 signatures as alleged in the mandamus petition. The answer thereafter proceeds to allege affirmatively that the protest petition is invalid for the following reasons:

(a)  That 1,131 signers were not registered to vote, or were registered to vote outside the corporate limits of the city, as disclosed by a list of the names of such persons, verified by the affidavit of the city clerk and made a part of the answer as Exhibit No. 2.

(b)  That 194 of the signers affixed their signatures to the protest petition more than once as shown by typewritten list of their names attached to and made a part of the answer as Exhibit No. 3.

(c)   That a minimum of 471 names appearing on the protest petition were affixed thereto by someone other than the "named signer", and that, therefore, such names cannot legally be counted in considering the sufficiency of the protest petition because the petition was not "duly signed by them", as required by the statute. An affidavit of the city clerk, accompanied by a typewritten list of the 471 names with their street addresses, states that, for reasons stated above, 471 signatures appearing on the protest petition are forgeries. Accompanying and attached to the affidavit of the city clerk and her attached typewritten list of names and addresses of persons is an affidavit to the same effect, accompanied by a typewritten list of 471 persons, made by M. A. Nernberg, of Pittsburgh, Pennsylvania, who is admitted to be a nationally recognized handwriting expert. These two affidavits, with accompanying lists of names and addresses, are filed with and made a part of the answer as Exhibit No. 4.

(d)   That 261 persons signed and lodged with municipal authorities writings by which they authorized and directed the removal of their names as signers of the protest petition. All but 7 of these 261 persons acknowledged their signatures before notaries public. The originals of the 261 written requests, accompanied by a typewritten list of their names and addresses and the several dates of the alleged withdrawals of their names, are filed with and made a part of the answer as Exhibit No. 5.

(e)   That 310 signers of the protest petition are registered at precincts not corresponding with their places of residence within the city and, therefore, they are not "duly qualified voters" within the meaning of pertinent statutory language, including the election law provisions of Code, 1931, 3-2-27, as amended. A list of the names and addresses of such 310 persons, accompanied and verified by an affidavit of the city clerk, is made a part of the answer as Exhibit No. 6.

(f)   That 105 alleged signers of the protest petition failed "to affix their addresses to said Petition as provided for in said Petition forms," thus making it impossible to

determine their residency within the city, and making "uncertain and nebulous any finding as to whether any of said signers is, in fact, 'a duly qualified and registered voter' within the municipality; * * *." A typewritten list of the names of "signers" in this category is made a part of the answer as Exhibit 7.

(g) That 97 "Mr. and Mrs. combinations" such as, for example Mr. and Mrs. John Doe, appear on the protest petition and that all such names "were disqualified and rejected for uncertainty as to who, in fact, signed the Petition and the impossibility of verifying such a signature against Voters Registration Lists." A typewritten list of such signatures is made a part of the answer as Exhibit No. 8.

(h) That material difference in 140 names appearing on the protest petition as compared with names used on the voters registration records made verification of the alleged signatures "very nebulous and uncertain." A typewritten list of these 140 names appearing on the protest petition was made a part of the answer as Exhibit No. 9.

(i) That 569 names of men preceded by Mrs., such as, for example, Mrs. John Doe, appeared on the protest petition and that these signatures "were disqualified and rejected because of the impossibility of verifying such signatures against Voters Registration Lists." A typewritten list of the 569 signatures in this category was made a part of the answer as Exhibit No. 10.

(j) That 198 signers of the petition failed to affix their given name or names to such petition but rather elected instead to use initials preceding the surnames, and that these signatures "were disqualified and rejected for uncertainty as to who, in fact, signed the Petition and the uncertainty and nebulousness of verifying such signatures against Voters Registration Lists." A typewritten list of such alleged signatures was made a part of the answer as Exhibit No. 11.

(k) That 16 alleged signatures on the protest petition were rejected because of various types of uncertainties.

Among such alleged signatures, for example, were Caroline, Glancy, Mrs. Bruce and 10 instances of signatures which omitted "Jr." as part of such names as they appear on voter registration records. A typewritten list of these 16 alleged signatures was made a part of the answer as Exhibit No. 12.

Copies of the minutes of the regular meetings of the Council of the City of Clarksburg held on July 20, August 3, August 17 and September 7, 1967, duly certified by the city clerk with the city seal affixed thereto, were made a part of the answer as Exhibit No. 13.

The answer further alleges that the mandamus proceeding cannot be maintained because the petitioner is "guilty of laches" because, though he was present in person at the regular public meeting of September 7, 1967 at which the protest petition was rejected, he did not institute this proceeding until four months and nine days thereafter. The answer also alleges "that respondents have, both jointly and severally, acted lawfully, expeditiously and in good faith, and in no way or manner have they acted arbitrarily, unreasonably, capriciously or fraudulently."

The demurrer to the mandamus petition asserts that the applicable statute does not apply to an amendment of an existing ordinance; that the petitioner is barred from maintaining this proceeding by the doctrine of laches; that the portion of the protest petition consisting of 18 pages was not timely filed, pursuant to the requirement of the statute and that, therefore, the 294 signatures appearing thereon must be rejected as a matter of law; and that the circumstances disclose that the respondents, in rejecting the protest petition, did not act in an arbitrary, unreasonable or capricious manner.

The petitioner's demurrer to the answer asserts that the answer is "insufficient in law"; that the petitioner has established a prima facie case which has not been rebutted by the respondents; that the respondents have adduced no evidence on any points in issue; and that the respondents "have failed to carry the burden of proving the petition invalid."

On April 12, 1968, the petitioner and all the respondents except councilmen Trimble and Kennedy, by counsel, entered into a stipulation of facts relating to factual issues raised by the pleadings in the mandamus proceeding. The stipulation was filed on the day before the case was argued and submitted for decision. The stipulation states that, at the time the protest petition was filed, there were 17,616 "registered voters" in the City of Clarksburg; that there were 6,770 "signatures" on the protest petition; that, under the applicable statute "petitioners would be required to show 5,285 valid signatures to said petition"; that 1,031 signatures on the protest petition "are disqualified because they were not registered or not registered within the municipality * * *;" that "There are 172 duplicate signatures which are disqualified;" that the "City alleges 283 forged signatures;" and that the "count" set forth in respondents' answer and designated previously in this opinion as (d), (e), (f), (g), (h), (i), (j) and (k) "is in each instance accurate." By the last portion of the stipulation, the petitioner admits the correctness of the numbers of names in the categories listed as (d) to (k), inclusive, but does not admit that any of the signatures in these several categories must be rejected as a matter of law.

The petitioner has failed to file any pleading denying the affirmative allegations of the answer but has placed his reliance in this respect upon his demurrer to the answer by which he admits the truth of all matters well pleaded in the answer. "A demurrer to an answer in a proceeding in mandamus admits the truth of all facts which are well pleaded in the answer." *Wilson* v. *The County Court of Logan County,* 150 W. Va. 544, pt. 2 syl., 148 S. E. 2d 353. While the affirmative allegations of the answer have not been denied by any pleading and while the truth of such allegations has been admitted by the demurrer, the legal effect of the facts thus alleged in the answer involve some of the issues presented for decision.

We consider it noteworthy that, by stipulation, it has been established as a fact that the protest petition, when presented to the municipal authorities, contained 172 duplicate signatures and the signatures of 1,031 persons who

were not registered or who, if registered, were not registered as voters within the City of Clarksburg. We deem it a matter of significance also that no pleading was filed as a denial of other affirmative allegations in the answer of irregularities involving many alleged signatures on the protest petition. *State ex rel. Plymale* v. *Garner,* 147 W. Va. 293, 128 S. E. 2d 185 and *State ex rel. Bess* v. *Black,* 149 W. Va. 124, 139 S. E. 2d 166, also involved allegations of fraud, forgeries and other gross irregularities relating to signatures of voters on petitions presented pursuant to pertinent statutes to require the public bodies in question to hold elections. The present case, and the two prior cases referred to immediately above, may be sufficient to suggest legislative amendment of statutes of this general character in some appropriate manner with a purpose of assuring a higher degree of accuracy, genuineness, good faith and integrity in the formulation of petitions of voters to require public bodies to hold elections for various purposes. "It is usually required that the signatures of petitions be verified. * * *." 28 Am. Jur., Initiative, Referendum and Recall, Section 24, page 452.

We are not aware of any statutory provision prescribing the manner in which the validity of a protest petition such as that involved in this case shall be determined. Unlike *State ex rel. Bess* v. *Black, supra,* in which the validity of the signatures was checked only by the county clerk, and unlike *State ex rel. Plymale* v. *Garner, supra,* in which the validity of the signatures was partially checked only by the city clerk, the validity of the protest petition in the present case was considered and its invalidity was determined by the city council in a regular, public meeting at which opponents of the ordinance, including Virgil Riffle, the petitioner in this mandamus proceeding, were present and permitted to be heard. The minutes of that meeting disclose that Virgil Riffle, at that time, stated: "Gentlemen, I think we have done this according to law. I know there are some names that aren't right—I heard of one ex-policeman who signed five times and a man at a gas station who wasn't even registered. I think you (Council) are making yourselves plain, * * *. As I told you before,

if we have to go to Court that is what we will do. * * *."
The following statement in relation to holding elections
on specific issues in response to petitions of voters is con-
tained in 29 C. J. S., Elections, Section 69, page 160: "In
the absence of any provisions of law to the contrary, the
duty to determine whether a petition for election is in
accordance with the law may fall on the officers to whom
it is presented and who are charged with the duty to call
the election. Where the officer with whom the petition
is filed has power to determine the validity of the signatures
thereon, his decision may not be subject to collateral attack.
In passing on petitions for elections and in deciding whether
or not to call an election, the officer with whom such a
petition is filed performs a judicial and not a ministerial
function." To the same effect, see 26 Am. Jur. 2d, Elections,
Section 192, page 20.

We are of the opinion that the 261 persons who signed
the protest petition legally withdrew their signatures by
filing with the city council written requests for such with-
drawals before formal action was taken on the protest peti-
tion and that, therefore, such signatures on the protest
petition were properly rejected by the city council. There
is a division of authority on the question of the right of
a signer of a petition, such as that involved in this case,
to withdraw his signature and particularly in relation to
the stage at which such right may be exercised. 29 C. J. S.,
Elections, Section 69, page 160; 26 Am. Jur. 2d, Elections,
Section 191, page 19; Anno. 27 A. L. R. 2d 604. We are
of the opinion that we are definitely and correctly aligned
with the authorities which hold that such a withdrawal of
a signature may legally be made at any time before the
petition is acted upon. *State ex rel. Noyes* v. *Lane,* 89 W.
Va. 744, pt. 3 syl., 110 S. E. 180. To the same effect, see
*Howell* v. *Wilson,* 371 S. W. 2d 627 (Ky. 1963); *Halgren*
v. *Welling,* 91 Utah 16, 29, 63 P. 2d 550, 556, citing *Noyes*
v. *Lane, supra.*

We are of the opinion also that the portion of the protest
petition consisting of 294 signatures which was filed on
July 20, 1967, was properly rejected because not filed within
fifteen days from the date of the second publication of the

ordinance on June 29, 1967, as required by the provisions of Code, 1931, 8-4-20, as amended. The statute clearly requires that the protest petition be "filed with the municipal authority within fifteen days after the expiration of such publishing * * *." That language is clear, unambiguous and imperative. It is well settled that language of a statute which is clear and unambiguous is not subject to construction or interpretation, but must be applied according to the intent clearly expressed therein. *In the Matter of the Estate of Elmer Resseger, Deceased; Mary E. Resseger, Executrix v. G. Thomas Battle, State Tax Commissioner,* 152 W. Va. 216, 161 S. E. 2d 257; *State ex rel. Dotson et al. v. VanMeter et al.,* 151 W. Va. 56, 150 S. E. 2d 604.

The answer alleges that 471 signatures on the protest petition were made by some person or persons other than the persons whose signatures they are represented to be and, as has been stated previously, this allegation was supported by typewritten lists of such names and by affidavits made by the city clerk and M. A. Nernberg, respectively. This allegation has not been denied by any pleading and its truth is established by such supporting affidavits and by the demurrer to the answer. The stipulation states that the "City alleges 283 forged signatures." The reduction of the number of signatures in this category from 471 to 283 is explained in the brief of counsel for the respondents (other than Trimble and Kennedy) as follows: "* * * However, many of the signatures were also subject to disqualification for other reasons. In particular, a great number of these signatures were names of people not registered at all or not registered to vote within the municipality. An adjustment has now been made to cover disqualifications for reasons other than the fact that the signature was forged. Based upon these adjustments, the parties hereto have now stipulated that the number of signatures alleged by respondents to be forged are two hundred eighty three (283)."

We are of the opinion that the 283 signatures referred to as "forged" signatures were improper and must be rejected in determining the sufficiency of the protest petition.

The statute in question contains the following language: "* * * In the event thirty percent of the registered voters by written petition *duly signed by them* * * *." (Italics supplied.) The 283 signatures were not made in conformity with the statute because the petition was not "duly signed by" the persons whose signatures they are represented to be.

*State ex rel. Noyes* v. *Lane,* 89 W. Va. 744, 110 S. E. 180, involved a recall petition signed by voters of the City of Wheeling pursuant to an ordinance of that municipality. The city clerk rejected some of the signatures on the petition because of his belief or determination that such signatures were not made in person by the persons in question. In relation to that contention, the Court stated (89 W. Va. at 750, 110 S. E. at 182): "* * * Under the statute, the affidavit appended to the petitions made them *prima facie* evidence of what they contained, and we do not think the clerk would have a right to institute an *ex parte* inquiry as to the genuineness of any of the signatures. * * *." We feel that the language of the Court quoted immediately above is not pertinent to the present case because signatures on the petition in the present case were not required to be verified by affidavit and also because the petition in the present case was rejected formally by the city council in the regular, public meeting, rather than merely by ex parte action of the city clerk.

*State ex rel. Marcum et al.* v. *County Court of Wayne County et al.,* 90 W. Va. 105, 110 S. E. 482, involved a petition of voters to require the county court to hold an election pursuant to the provisions of Barnes' West Virginia Code, 1923, Chapter 39, Section 15, on the issue of relocation of the county seat. In the fifth point of the syllabus, the Court stated that the statute did not require that a signature be "in the handwriting of the petitioner. The signature of a voter written on such a petition by another, in his presence and by his direction, is valid and sufficient." In the body of the opinion (90 W. Va. 112, 110 S. E. 485), the Court stated: "If a statute requires the signature to be in the handwriting of the person signing, * * *, the signing cannot be delegated. * * *." It is established in

the instant case that the 283 signatures in question were not signed personally by the persons whose signatures they are represented to be; and there has been no effort to establish, by pleading or proof, that the signature of any of the 283 persons was made "in his presence and by his direction."

It appears, therefore, that the protest petition did not contain the requisite number of valid signatures and that it was properly rejected.

We are of the opinion that the provisions of Code, 1931, 8-4-20 as amended, apply to an ordinance which is amended and reenacted, particularly where the amendment is of a substantial character, as in this case.

This Court has decided in numerous cases that, in order that one may be entitled to a writ of mandamus, he must show a clear legal right to the relief sought by him and a corresponding duty on the respondent or respondents to perform the act demanded. *State ex rel. Greenbrier County Airport Authority* v. *Hanna*, 151 W. Va. 479, 153 S. E. 2d 284, 292; *State ex rel. Zagula, etc., et al.* v. *Grossi, Clerk, etc., et al.*, 149 W. Va. 11, 138 S. E. 2d 356. Being of the opinion that the relator has not shown a clear legal right to the relief sought by him in this mandamus proceeding, the Court, for reasons stated in this opinion, denied the writ prayed for by its order entered on June 11, 1968.

In view of the Court's decision expressed in this opinion, we deem it unnecessary to decide any of the additional questions which have been raised in the case.

*Writ denied.*