377 S.E.2d 476

Randolph C. SCOTT and Others, Marion County Citizens for Better Government, Inc., etc., Jean S. Conley and Dave Brown, Petitioners Below,

v.

MARION COUNTY COMMISSION, etc. and Marion Co. Fire Board, Inc., etc. Respondents Below.

No. CC 983.

Supreme Court of Appeals of West Virginia.

Nov. 30, 1988.

Rehearing Denied Feb. 22, 1989.

**484**

Gary J. Martino, Clagett and Gorey, Fairmont, for Citizens, Conley & Brown.

Randolph C. Scott, Fairmont, pro se.

Jay Montgomery Brown, PA, Fairmont, for Marion County Com'n etc.

NEELY, Justice:

In 1984 the legislature found "that fire protection and saving lives and property are important to the health and welfare of the citizens of the state and that it is desirable for county governments to provide fire protection services to county residents." *W.Va.Code*, 7–17–1 [1984]. In order to allow counties to subsidize rural, volunteer fire departments, the legislature enacted *W.Va.Code*, 7–17–12 [1984], which authorized the counties to "impose by ordinance, upon the users of such services, reasonable fire service rates, fees and charges...."

In Marion County, there is a paid fire department within the municipal limits of Fairmont, where a fire service fee of approximately eighty dollars per private dwelling is charged by the City. In and about the municipal limits of Mannington, there is a volunteer fire department which receives financial support from the City of Mannington. In the rest of Marion County fire prevention and protection services are performed by a number of local, volunteer fire departments. The certified question before us now relates directly to an ambiguity in *Code*, 7–17–12 [1984] concerning whether a county ordinance imposing a fire service fee can be initiated by a petition signed by ten percent of the registered voters of the affected area, or must be signed by ten percent of the registered voters of the entire county.

In 1987 the Marion County Commission enacted an ordinance, effective 1 July 1987, establishing a fire service fee of $40 per year on private, single residences in those areas not served by the Fairmont or Mannington fire departments. The volunteer fire departments then discontinued their major fund-raising activities, preeminent among which was a voluntary assessment on property owners for placement of a locator sign on their property that allowed prompt dispatching of fire and other emergency assistance. The average monthly expenses for the volunteer fire departments total $25,704.00.

In October 1987, Randolph Scott filed suit to enjoin collection of the fire service fee; ultimately he was joined by the Marion County Citizens for Better Government, Inc. and Jean S. Conley and Dave Brown (other private citizens), all represented by counsel. Following three short hearings, Judge Rodney B. Merrifield of the Circuit Court of Marion County granted a temporary injunction and then recused himself. We assigned Judge Frank Maxwell to preside over further proceedings and Judge Maxwell, after a hearing, denied the county commission's motion for summary judg-

ment and certified the following question to this Court:

> Does the statutory [7–17–12] requirement for passage of an ordinance establishing a fire service fee, namely of a petition being signed by "ten percent of the qualified voters", mean: The qualified voters of the entire county must be used when calculating the ten percent signature figure called for in this section?"

Judge Maxwell answered this question in the affirmative.

In the area of Marion County that is served by the volunteer fire departments that would benefit under the county ordinance there are 17,489 registered voters. In the entire county there are 32,906 registered voters. The petition initiating the fire service fee ordinance contained 1,929 uncontested signatures. Mr. Scott and his fellow petitioners assert that the petition should have contained the signatures of ten percent of the registered voters of the county in order to be valid, and not simply ten percent of the registered voters of the affected area. We disagree.

*W.Va.Code*, 7–17–12 [1984] provided as follows:

> Every county commission which provides fire protection services has plenary power and authority to provide by ordinance for the continuance or improvement of such service, to make regulations with respect thereto and to impose by ordinance, upon the users of such services, reasonable fire service rates, fees and charges to be collected in the manner specified in the ordinance. However, before a county commission can impose by ordinance, upon the users of such service, a reasonable fire service fee, *ten percent of the qualified voters shall present a petition duly signed by them in their own handwriting* and filed with the clerk of the county commission directing that the county commission impose such a fee. The county commission shall not have a lien on any property as security for payments due under the ordinance. Any ordinance enacted under the provisions of this section

shall be published as a Class II legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code, and the publication area for such publication shall be the county in which the county fire board is located. *In the event thirty percent of the qualified voters of the county by petition duly signed by them in their own handwriting* and filed with the clerk of the county commission within fifteen days after the expiration of such publication protest against such ordinance as enacted or amended, the ordinance may not become effective until it is ratified by a majority of the legal votes cast thereon by the qualified voters of such county at any primary, general or special election as the county commission directs. Voting thereon may not take place until after notice of the submission has been given by publication as above provided for the publication of the ordinance after it is adopted. The powers and authority hereby granted to county commissions are in addition to and supplemental to the powers and authority otherwise granted to them by other provisions of this code.

> Any fees imposed under this article are dedicated to the county fire board for the purposes provided in this article.

> In the event the county fire board determines an increase in any such fee imposed by this section is necessary, it shall by resolution request the county commission for such an increase. Procedures set forth in this section for the initial levy of such a fee shall be followed by the county commission in the event an increase is sought. [emphasis added].

This entire case boils down to the proper application of the ancient maxim *"inclusio unius est exclusio alterius."* Logic implies that when the legislature said:

> "However, before a county commission can impose by ordinance, upon the users of such service, a reasonable fire service fee, ten percent of the qualified voters shall present a petition duly signed by them ..."

the legislature meant ten percent of the qualified voters who would pay the fee. Otherwise there would have been no purpose in saying "qualified voters" in the section relating to the initiating petition and "qualified voters *of the county*" in the section relating to calling for a referendum. There is little reason to set up a scheme under which voters who would not pay a fee or benefit from a service could petition to force strangers to pay a fee or benefit from a service.

But why, one must reasonably ask, did the legislature then go on to say:

"[i]n the event thirty percent of the qualified voters of the county by petition duly signed by them ... protest against such ordinance as enacted or amended, the ordinance may not become effective until it is ratified by a majority of the legal votes cast ..."

The answer to this question takes us back to *W.Va.Code*, 7-17-1 [1984], where the legislature found that it is desirable for county governments to provide fire protection services to county residents. The structure, then, of *W.Va.Code*, 7-17-12 [1984], was deliberately designed to make the initiation of a fire service fee ordinance comparatively simple, while at the same time making it difficult (but not impossible) for taxpayers to call for a referendum.

In 1988 the West Virginia Legislature clarified this point by amending *W.Va. Code*, 7-17-2 to define "qualified voters" for the first time. Under the 1988 amendment, "qualified voters means registered voters who reside in the affected fire service district and are users or prospective users of the fire prevention and fire protection services provided by the fire service under the provisions of this article." This amendment had the effect of allowing county commissions in the future to do exactly what the Marion County Commission did in this case; it also removed the earlier obstacle to getting the fire service fee issue on the ballot by allowing the referendum to be initiated by thirty percent of the affected voters rather than thirty percent of the voters of the entire county. We find, therefore, that the legislature intended in *Code*, 7-17-12 [1984], to make a distinction between the voters of the affected area who could initiate the fire service fee and the voters of the entire county who were needed to place the issue on the ballot.

Accordingly, the Circuit Court's answer to the certified question is reversed and the case is remanded with directions to lift the temporary injunction and to conduct further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.