449 S.E.2d 508

**PUTNAM COUNTY FIRE SERVICE BOARD, INC., a Public Corporation, Plaintiff,**

v.

**Jack KELLY and Josephine Kelly, et al. Defendants.**

No. 22044.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1994.

Decided July 8, 1994.

Howard R. Crews, Jr., William J. Hanna, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for plaintiff.

Harvey D. Peyton, Nitro, for defendants.

WORKMAN, Justice:

This action originated when civil suits were instituted by the Plaintiff, Putnam County Fire Service Board (hereinafter also referred to as the Board), in the Magistrate Court of Putnam County to collect delinquent fire service fees owed by the Defendants,[1] who are owners of residential and commercial realty situated in Putnam County, to the Plaintiff pursuant to the Putnam County Fire Service User Fee Ordinance (hereinafter referred to as the fire service fee ordinance) and West Virginia Code § 7–17–12 (1984). The Defen-

---

1. Eleven separate actions were originally instituted by the Board. Once the Defendants had the actions removed to the circuit court, they were consolidated. The delinquent fire service fees sought from all of the Defendants, as of December 30, 1993, cumulatively totalled approximately $24,324.50, inclusive of applicable penalties and late fees.

dants subsequently removed the cases to circuit court and challenged the validity of the fire service fee ordinance. On August 2, 1993, the Circuit Court of Putnam County ordered the certification of the following question:

> Does the adoption of the Putnam County fire service user fee ordinance pursuant to W.Va.Code § 7–17–12, as enacted in 1984 and prior to that statute's amendment in 1988, violate the First and Fourteenth Amendments of the United States Constitution and Article III, Section 16 of the Constitution of the State of West Virginia in that the period of time allowed opponents of the ordinance to file petitions protesting same was unduly restrictive? [2]

The circuit court, by answering this question in the affirmative, found the statute unconstitutional. Upon review of the parties' briefs, arguments and all other matters of record submitted before this Court, we conclude that the circuit court erred in its answer and hold that West Virginia Code § 7–17–12 is constitutional.

## I.

The Legislature enacted West Virginia Code § 7–17–1 to –20 (1993) so that county fire boards could be established because "[t]he legislature finds that fire protection and saving lives and property are important to the health and welfare of the citizens of the State and that it is desirable for county governments to provide fire protection services to county residents." W.Va.Code § 7–17–1. To enable county governments to provide fire service protections, West Virginia Code § 7–17–12, as originally enacted, provided for the enactment of fire service fees as follows:

> Every county commission which provides fire protection services has plenary power and authority to provide by ordinance for the continuance or improvement of such service, to make regulations with respect thereto and to impose by ordinance, upon the users of such services, reasonable fire service rates, fees and charges to be collected in the manner specified in the ordinance. However, before a county commission can impose by ordinance, upon the users of such service, a reasonable fire service fee, ten percent of the qualified voters shall present a petition duly signed by them in their own handwriting and filed with the clerk of the county commission directing that the county commission impose such a fee.... Any ordinance enacted under the provisions of this section shall be published as a Class II legal advertisement ... and the publication area for such publication shall be the county in which the county fire board is located. *In the event thirty percent of the qualified voters of the county by petition duly signed by them in their own handwriting and filed with the clerk of the county commission within fifteen days after the expiration of such publication protest against such ordinance as enacted or amended, the ordinance may not become effective until it is ratified by a majority of the legal votes cast thereon by the qualified voters of such county at any primary, general or special election as the county commission directs.* [3] (Emphasis added).

On October 28, 1985, the Putnam County Fire Service Coordinator (hereinafter referred to as the Coordinator) presented the Putnam County Commission (hereinafter referred to as the Commission) with a petition bearing 1,905 signatures asking the Commission to impose an ordinance creating a fire service fee in the county. [4] The Coordinator also presented the Commission with a draft

---

**2.** On August 2, 1993, the circuit court actually certified five questions to this Court concerning the validity of the fire service fee ordinance, but the question addressing the 15 day limitation period is the only one which the court answered unfavorably to the Plaintiff. We subsequently denied the Defendants' petition with respect to the remaining four certified questions.

**3.** In 1988, the legislature amended West Virginia Code § 7–17–12, extending the time period from 15 to 45 days after the two-week publication period in which qualified voters must file a petition opposing the imposition a fire service fee. Further, the term "qualified voters" is now defined within the statute. *See* W.Va.Code § 7–17–2(6) (1993).

**4.** There was no dispute regarding the validity of the petition submitted by 10% of the qualified voters in the county requesting the enactment of the fire service ordinance.

of a fire service fee ordinance, which the Commission adopted on first reading. On November 4, 1985, the Commission adopted the ordinance in final form. The effective date for the ordinance was January 1, 1986.[5]

On November 7 and November 14, 1985, the text of the ordinance adopted by the Commission was published in the Charleston Gazette and the Charleston Daily Mail in accordance with West Virginia Code § 7–17–12. During the fifteen days following November 14, 1985, persons seeking a public vote on the fire service fee ordinance gathered 6,577 signatures on a petition and submitted said petition to the clerk of the Commission.

On December 2, 1985, the clerk of the Commission presented the petition seeking ballot access to the Commission and requested an order from the Commission directing him to verify the signatures. On February 6, 1986, the Commission was informed by the County Administrator that, while a total of 6,577 signatures appeared on the petition, only 4,932 were qualified voters, which was 482 signatures short of the amount required to put the fee issue on the ballot.[6]

## II.

The issue is whether the fifteen-day limitation period formerly established by West Virginia Code § 7–17–12 for opponents of a fire service fee ordinance to file petitions in protest of the ordinance in order to obtain ballot access is constitutional. The Plaintiff argues that the fifteen-day limitation period mandated by West Virginia Code § 7–17–12 is clear, unambiguous, imperative and constitutional. The Plaintiff also maintains that the circuit court's ruling that the fifteen-day limitation period is "unduly restrictive" is arbitrary, capricious and plainly wrong. In contrast, the Defendants contend that the fifteen-day limitation period provided for by the statute unduly burdens the right of individuals to associate freely and to have access to the ballot box.

The Plaintiff relies heavily upon this Court's decisions in *State ex rel. Riffle v. City of Clarksburg*, 152 W.Va. 317, 162 S.E.2d 181 (1968) and *State ex rel. Plymale v. City of Huntington*, 147 W.Va. 728, 131 S.E.2d 160 (1963), to support its contention that the statutory fifteen-day limitation period mandated by West Virginia Code § 7–17–12 is clear, unambiguous and constitutional. In *Riffle* and *Plymale* we upheld a similar statutory fifteen-day limitation period applicable to municipalities seeking to enact fire service fees found within West Virginia Code § 8–13–13 (1990).[7] In *Riffle*, we explained that

> [w]e are of the opinion also that the portion of the protest petition consisting of 294 signatures ... was properly rejected

**5.** According to the Defendants' brief, in 1992, the ordinance was reenacted and republished in accordance with the 1988 amendments to West Virginia Code § 7–17–12.

**6.** According to the record, Putnam County had 18,050 qualified voters. West Virginia Code § 7–17–12 mandated that signatures from 30% of the qualified voters had to be obtained within the 15 day period before the ordinance could be placed on the ballot. Consequently, a minimum of 5,414 signatures was needed. It is undisputed that the opponents' petition to the fire service fee ordinance failed to contain the requisite signatures of 30% of the qualified voters.

**7.** West Virginia Code § 8–13–13 provides, in pertinent part,

> Notwithstanding any charter provisions to the contrary, every municipality which furnishes any essential or special municipal service, including, but not limited to, police and fire protection ... shall have plenary power and authority ... to impose by ordinance upon the

users of such service reasonable rates, fees and charges to be collected in the manner specified in the ordinance.... Notwithstanding the provisions of section four [§ 8–11–4], article eleven of this chapter, any ordinance enacted or substantially amended under the provisions of this section shall be published as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this code, and the publication area for such publication shall be such municipality. *In the event thirty percent of the qualified voters of the municipality by petition duly signed by them in their own handwriting and filed with the recorder of the municipality within fifteen days after the expiration of such publication protest against such ordinance as enacted or amended, the ordinance shall not become effective until it shall be ratified by a majority of the legal votes cast thereon by the qualified voters of such municipality at a regular municipal election or special municipal election, as the governing body shall direct.* (Emphasis added).

because not filed within fifteen days from the date of the second publication of the ordinance ..., as required by the provisions of Code, 1931, 8–4–20,[8] as amended. The statute clearly requires that the protest petition be 'filed with the municipal authority within fifteen days after the expiration of such publishing * * *.' That language is clear, unambiguous and imperative. It is well settled that language of a statute which is clear and unambiguous is not subject to construction or interpretation, but must be applied according to the intent clearly expressed therein.

152 W.Va. at 328–29, 162 S.E.2d at 188 and Syl. Pt. 4, in part (footnote inserted); *see also Plymale*, 147 W.Va. at 734, 131 S.E.2d at 164 ("If within fifteen days after the expiration of the required publication thirty per cent of the registered voters, by written petition, protest against the ordinance, it shall not become effective until ratified by a majority of the votes cast by the duly qualified voters of the municipality.").

■ West Virginia Code § 7–17–12 and the language of West Virginia Code § 8–13–13 pertaining to fire service fees are virtually identical. Both statutory provisions require a petition containing signatures from thirty percent of the qualified voters in opposition to a fire service fee ordinance in order to gain ballot access as well as mandate that the petition in opposition to said ordinance be filed with the respective governing bodies within fifteen days after the publication of the fire service fee ordinance. The only significant difference between the two statutory schemes is that West Virginia Code § 7–17–12 applies to counties, while West Virginia Code § 8–13–13 governs municipalities. Accordingly, following our previous decision in *Riffle*, where we concluded that the language mandating the fifteen-day limitation period in West Virginia Code § 8–13–13 was "clear, unambiguous and imperative," we similarly find that the statutory requirement in West Virginia Code § 7–17–12 that a protest petition be filed with the commission within fifteen days after publication of the fire service fee ordinance is unambiguous and

imperative. *See* 152 W.Va. at 328–29, 162 S.E.2d at 188.

We acknowledged how imperative the fifteen-day limitation period found within West Virginia Code § 7–17–12 was in *Scott v. Marion County Commission*, 180 W.Va. 483, 377 S.E.2d 476 (1988). In *Scott*, we were presented with the issue of whether the term "qualified voters" found within that statute related to registered voters only in the area that would pay the fire service fee or whether the term related to the entire county. *Id.* at 485, 377 S.E.2d at 477. In concluding that West Virginia Code § 7–17–12 only required the signatures of ten percent of the registered voters of the area that would actually pay the fee on a petition to initiate a fire service fee, we reasoned that

the legislature found that it is desirable for county governments to provide fire protection services to county residents. *The structure, then, of W.Va.Code, 7–17–12 [1984], was deliberately designed to make the initiation of a fire service fee ordinance comparatively simple, while at the same time making it difficult (but not impossible) for taxpayers to call for a referendum.*

*Id.* at 486, 377 S.E.2d at 478 (emphasis added).

■ We are unpersuaded by the Defendants' argument that the fifteen-day limitation period for filing a protest petition somehow infringes on their fundamental right to political activity and ballot access for which the state must show that a compelling state interest is being served by such limitation in order for this Court to uphold the statutory limitation. *See State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 333, 233 S.E.2d 419, 422–23 (1977). In *Piccirillo*, the appellant was denied the right to become a candidate for city council because she did not possess the requisite property qualification required by the city charter and statute. *Id.* at 329–30, 233 at 420–21. We held that the right to become a candidate was a fundamental right and that the placing of a statutory restriction on that right requiring the candidate to have paid taxes on at least $100 of real or personal property served no compel-

---

8. West Virginia Code.§ 8–13–13 was formerly West Virginia Code § 8–4–20 (1931).

ling interest. *Id.* at 334–35, 233 S.E.2d at 423.

■ In the present case, we are not presented with facts of comparable magnitude to those found in *Piccirillo.* Here, the Defendants have neither been denied the right to engage in political activity nor have they been denied the right to the ballot. The Defendants simply failed to collect the requisite thirty percent of the qualified voters' signatures on a petition prior to submitting said petition to the Commission within fifteen days after publication of the ordinance. Since a fundamental right is not involved, all the Plaintiff must demonstrate to uphold the constitutionality of the ordinance with its statutory limitation is that the law bears some rational relationship to a legitimate state purpose. *Id.* at 333, 233 S.E.2d at 422–23. Given that the purpose for enacting the fire service fee ordinance was to ensure the protection of property and the safety of citizens, the ordinance certainly is rationally related to the legitimate state interest of protecting the welfare of its citizens. Accordingly, we hold that the provision of West Virginia Code § 7–17–12, which before it was amended in 1988, provided that a petition in protest of a county fire service fee ordinance be filed with the clerk of the county commission within fifteen days [9] after the expiration of the publication of the ordinance, is constitutional.[10]

Based on the foregoing, the certified question presented to this Court by the Circuit Court of Putnam County has been answered. The action is hereby dismissed from the docket of this Court.

Certified question answered.

---

9. *See supra* note 3.

10. We also upheld the constitutionality of West Virginia Code § 8–13–13 in syllabus point 1 of *McCoy v. City of Sistersville,* 120 W.Va. 471, 199 S.E. 260 (1938).